T. K. Lewis and Cecile G. Lewis v. Commissioner. T. K. Lewis v. Commissioner.
T. K. Lewis v. Commissioner
Docket Nos. 21768, 21769.
United States Tax Court
1950 Tax Ct. Memo LEXIS 299; 9 T.C.M. (CCH) 32; T.C.M. (RIA) 50015; January 17, 1950
*299 Eugene E. Gilmer, Esq., 412 Empire Bldg., Birmingham, Ala., for the petitioners. Homer F. Benson, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated, involve income taxes for the calendar years 1944 and 1945. Deficiencies were determined in the amounts of $671.50 and $369.38, respectively. The issues presented are: (a) Whether the petitioner T. K. Lewis (hereinafter called petitioner) reported in duplicate items of $1,269.43 and $1,500; (b) whether he reported non-taxable income of $193.20 from veteran's disability payments; (c) whether the Commissioner erred in allowing only 75 per cent of automobile expenses claimed and only a portion of the amounts claimed as expenses for "emergency drugs"; (d) whether the petitioner is entitled to surtax exemption in 1944 of $500; and (e) whether Cecile G. Lewis is entitled to a net operating loss carry-over from 1944 to 1945 in the amount of $299. We make the following Findings of Fact The petitioners are husband and wife, living together in Birmingham, Alabama, with one daughter, a student in the University of Alabama in the taxable year 1944. Petitioner *300 was the sole support of his wife and daughter. He filed, with the collector for the district of Alabama, a separate return for 1944 and they filed a joint return for 1945. She filed no return for 1944. He is a physician practicing, particularly in diseases of the heart, in Birmingham, Alabama. During 1944 his bookkeeper kept a daily diary showing his daily receipts, but in a move of his office the diary was lost. About August 1944, in connection with purchase of a house, the petitioner, sold some bonds for about $3,000, to pay upon a mortgage on the house, but the mortgagee would accept only $1,500 and $1,500 was shortly thereafter put in petitioner's savings account. Petitioner is a veteran of the United States Army, having served in World War I. During 1944 he received, and deposited in bank, disability payments. Petitioner's office was about 12 to 15 miles from his home. He maintained office hours seven days each week in the taxable years. He had patients in a number of hospitals. He used his car during the taxable years largely for professional purposes, but also to go to and from his home. No one used it but him. During the war, including the taxable years, there was *301 a shortage of some vital drugs, such as quinidine, digitalis, and sulpha drugs. These were used extensively by petitioner in his practice. He had to go, some times, to drug stores where he was not known in order to buy those drugs. In such cases he usually paid cash, sometimes writing checks for the amount, but cashing the checks and paying cash. During 1944 and 1945 petitioner followed the policy of depositing all funds received by him in his bank accounts. His secretary, who is his sister, kept his books. He paid his expenses mostly by check but in some small matters by cash. His wife writes her own checks on the joint bank account. He often gave his daughter cash. His deposits were usually made once a week. The petitioner withdrew from his savings account and deposited in his checking account during the year 1944 a total of $638.36. His total deposits in his savings account in 1944 were $8,415.75 and his total deposits in his checking account in 1944 were $16,857.48, making a total of $25,273.23. He reported on his amended return for 1944 income as follows "Fees for service rendered $16,376.41; X-ray income $8,090.75," total $24,467.16. Therefrom he deducted total expense *302 of $13,015.05, leaving net income of $11,452.11. (In addition he reported separately $170 income from dividends and interest.) The return makes no mention of exempt income, or income from veteran's disability payments. The original return for 1944 stated the same amounts and items of income as the amended return. The original and amended returns for 1944 and return for 1945 all refer to purchase of drugs as cash purchases. During 1945 Cecile G. Lewis received rent from a building, standing in her name, in the amount of $114. It was deposited in the bank. She paid out on the building $101 for insurance. She had a separate account at that time. She owned no other property and had no other income. For the year 1944 the deficiency notice (in addition to matters not placed in issue) disallowed $255.92, or 25 per cent of the automobile expenses claimed on the return; allowed only $134.60 out of $500 deducted for "emergency drugs (cash purchase)"; and disallowed $500 surtax exemption for petitioner's wife on the ground that she had gross income of her own. For the year 1945 the deficiency notice allowed only $150 out of $350 claimed as cash used to purchase drugs; and disallowed $263.17 *303 or 25 per cent of the amount claimed for use of automobile. The petitioner paid taxes for the year 1944 as follows: $281.07 in each of the months May, June and September in 1944 and January 1945. He also, on September 7, 1944, paid $187 by check to one H. M. Raiford for "repairs to house." Opinion The assignments of error in this case are to a considerable extent not supported by the evidence. Considering such assignments as well as we may under the circumstances we conclude and hold: (1) Petitioner's contention that there was duplication of income reported in the amount of $1,269.43 and $1,500 is not supported by the record. Though by perhaps somewhat relaxing rules of evidence we have found that the $638.36 was taken out of the petitioner's savings account and placed in his checking account during 1944, and though it is shown that $1,500 was deposited in petitioner's bank account from the sale of some bonds, it does not follow that there was duplication of income reported; for the petitioner's whole theory depends upon his affirmative answers to the questions as follows: "Q. And during the two years here involved, Doctor, 1944 and 1945, did you follow the policy of depositing *304 all funds received by you in one or the other of your bank accounts? "A. Yes. "Q. And reported that as income? "A. I did." whereas the evidence before us indicates that all funds deposited by the petitioner in his bank accounts were not reported as income. For 1944 (in addition to $170 from dividends and interest) he reported a total income of $24,467.16 but there was placed in evidence his savings account with the Exchange Bank of Birmingham, showing the deposit therein of $8,415.75 in 1944; and there was also placed in evidence his checking account with the same bank for the year 1944, showing a total of deposits therein of $16,857.48 - a total of $25,273.23 for the year 1944. Since, therefore, though there was testimony as to a "policy" to deposit and report all funds received, all deposits were not reported as income, we can not say that the transfer of funds from the savings account to the checking account demonstrates duplication of reported income, or that all income was reported. Moreover, as to the $1,500, there is no showing that the bonds (from the sale of which the $1,500 was derived and deposited in the savings account) were purchased out of petitioner's bank accounts *305 or reported earnings. Evidence of some cash transactions also weakens the contention that all earnings were deposited. (2) Likewise, petitioner's contention that disability payments received from the Veterans Administration in the amount of $193.20 should be eliminated as exempt from income tax can not be sustained for the mere reason that proof of the receipt of that amount was not made, and, as above stated, there is no proof that the amounts were reported as income. The returns for 1944, in fact, indicate otherwise, since all income is described as from "service rendered" and "X-ray income." (3) The petitioner's contention that the Commissioner erred in disallowing 25 per cent of the amounts claimed as expense of his automobile, used in business, can not be sustained for the reason that the automobile was used in going to and from petitioner's office, a distance of 12 or 15 miles. Since he kept office hours seven days a week and such transportation to and from his home is not deductible, it is impossible to say that the Commissioner erred in disallowing the 25 per cent, in either taxable year. (4) Likewise, we do not sustain petitioner's contention that the Commissioner erred *306 in allowing expense of drugs in the amount of only $134.60 out of $500 claimed in 1944, and in allowing only $150 for the same purpose out of $350 claimed for 1945. Nothing in the record before us demonstrates error in the denial of the additional amounts. The payments were not substantiated by checks, though some part of the amounts were paid by check; nor is there any showing that the expense was necessary beyond the amount allowed. (5) Petitioner's contention for a $500 surtax exemption for 1944 because of his wife depends upon whether under Section 25 (b) (1) (B) (ii) of the Internal Revenue Code, as effective in 1944, she had no gross income. It is contended that though she actually received $114 rent from a building standing in her name she had no gross income because she paid out insurance of $101, $187 for repairs, and had depreciation on the building of $125. It is not shown that she paid the $187 for repairs or that depreciation of $125 was sustained on the property. Petitioner paid the $187 by check. Therefore, it does not appear that she had a loss. In any event, the $114 was gross income even if the expenses mentioned had been paid therefrom. The *307 claim of surtax exemption is denied. (6) Petitioner Cecile G. Lewis claimed for 1945 a net operating loss carry-over from 1944 in the amount of $299. She filed no return for 1944, though it appears, as above set forth, that she had gross income of $114, out of which she paid $101, and it is contended that she also paid $187 for repairs and suffered depreciation of $125, a total of $413, resulting, it is claimed, in a net operating loss carry-over of $299. Since there is no showing that she paid anything except $101, there is no showing of a net operating loss. No return filed by her or her husband for 1944 indicates any depreciation on the building and he and not she paid the $187 alleged repairs. The claim, therefore, for net operating loss carry-over deduction is denied. Decision will be entered for the respondent.