WILLIAM J. FALTESEK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 48522-86.     Filed June 6, 1989.

*James C. Gray,* for the petitioner.
*Gregory Garland,* for the respondent.

RAUM, *Judge:* The Commissioner determined deficiencies in petitioner's Federal income tax and additions to tax as follows:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)[1] | Sec. 6654(a) |
| 1982 | $30,932.00 | $7,733.00 | $1,546.60[1] | $3,016.92 |
| 1983 | 17,248.60 | 4,312.15 | 862.43[1] | 1,055.48 |

[1]Plus 50 percent of interest due pursuant to section 6653(a)(2).

The facts have been stipulated.

Petitioner, a U.S. citizen, owns a residence in Houston, Texas, as well as a condominium in Conroe, Texas. He is an engineer, employed by IMCO Services (a subsidiary of Halliburton Co.) having an address in Houston, Texas. He has been a bona fide resident of one or more foreign countries continuously since August 17, 1974, through the date of the filing of his petition. As an employee of IMCO, he was a resident of Scotland for the first 2 months of 1982, and thereafter continuously at least through 1983 of the United Arab Emirates (UAE). His tax homes during those 2 years were Aberdeen, Scotland, and Dubai, UAE, respectively. Petitioner's spouse, Marisa R. Faltesek, resided with him abroad, but was treated as a "resident" alien by reason of an election under section 6013(g) that was made by both of them in their 1976 return and remains in effect for the years 1982 and 1983.

Petitioner did not timely file his Federal income tax returns for the years 1982 and 1983, due to his belief that the section 911 foreign earned income exclusion had been increased under the Economic Recovery Tax Act of 1981 (ERTA) to such an extent that he owed no tax. He also believed that he was relieved of a filing obligation. Such beliefs were erroneous, as will be shown hereinafter, to the extent that the exclusion was thought to be available to him without his affirmative action of making an appropriate election and the filing of returns.

On July 25, 1986, prior to petitioner's filing any returns for the years 1982 and 1983, the Commissioner mailed the statutory notice of deficiency to him, in which the principal item for each year was "wages." Petitioner then timely filed his petition herein on December 22, 1986. Only thereafter, namely, on January 26, 1987, did petitioner and his spouse file their original 1982 and 1983 joint returns. These returns were accompanied by IRS Forms 2555 in which petitioner attempted to elect to receive the benefits of the section 911 exclusion for each year. The returns reported negative taxable income for 1982 and 1983 in the amounts of $17,064 and $18,175, respectively. The only matter in dispute is the excludability under section 911(a) of petitioner's foreign earned income, and this in turn depends upon whether petitioner properly made the section 911(e) election to trigger the applicability of section 911(a), which further in turn depends upon the validity of the Treasury regulations setting forth the conditions for making a valid election.

For tax years beginning after December 31, 1981, ERTA did in fact substantially increase the tax benefits for American citizens working abroad. To the extent relevant here, section 911(a), as completely revised by ERTA,[1] provided:

SEC. 911. CITIZENS OR RESIDENTS OF THE UNITED STATES LIVING ABROAD.

(a) EXCLUSION FROM GROSS INCOME.—At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—

---

[1]Secs. 111(a) and 115 of Pub. L. 97-34, 95 Stat. 172, 190, 196.

(1) the foreign earned income of such individual, and

(2) the housing cost amount of such individual.

Section 911(b)(2)(A) fixed a top limit of excludable foreign earned income at $75,000 for the tax year beginning in 1982, which increased at the rate of $5,000 a year until it reached $95,000 for 1986. For years beginning after December 31, 1986, the top limit was reduced by subsequent legislation to $70,000.[2]

As the first three words of section 911(a) indicate, the exclusion is available only if the taxpayer so elects. Quite possibly, he might not wish to make any such election if the taxes paid by him to the foreign country upon his foreign earnings therein exceeded his United States income taxes and could thus be used as a section 901 credit against his United States taxes. For section 911(d)(6) makes clear that no such credit would be available to the extent that it is allocable to amounts excluded from gross income under section 911(a). At the heart of this case is the election, since petitioner seeks the benefit of the section 911(a) exclusion. The section 901 credit would be far less useful to him here since he was a resident only the first 2 months of 1982 in Scotland, which imposes an income tax, and the remainder of 1982 and all of 1983 in the United Arab Emirates which imposes no income tax at all.

Provisions relating to the election required to bring section 911(a) into play are contained in section 911(e), which reads as follows:

SEC. 911(e). ELECTION.—

(1) IN GENERAL.—An election under subsection (a) shall apply to the taxable year for which made and to all subsequent taxable years unless revoked under paragraph (2).

(2) REVOCATION.—A taxpayer may revoke an election made under paragraph (1) for any taxable year after the taxable year for which such election was made. Except with the consent of the Secretary, any taxpayer who makes such a revocation for any taxable year may not make another election under this section for any subsequent taxable year before the 6th taxable year after the taxable year for which such revocation was made.

---

[2]Sec. 911(b)(2)(A) as amended by sec. 1233(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2564.

However, section 911(e) does not contain anything about the time and manner of making the election, and, obviously, the subject is one that may appropriately be dealt with by regulation. In this respect section 911(d)(7), which relates to all the provisions of section 911, is particularly relevant. It provides:

SEC. 911(d). DEFINITIONS AND SPECIAL RULES.—For purposes of this section—

\* \* \* \* \* \* \*

(8) REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of this section \* \* \*

It was subsequently redesignated section 911(d)(8) and as such was made applicable to the years in issue.[3] We will refer to it hereinafter as section 911(d)(8).

The applicable provisions of the regulations here involved are found in section 1.911-7(a)(1) and (2), Income Tax Regs., which reads as follows:

SEC. 1.911-7. Procedural rules.

(a) *Elections of a qualified individual—*(1) *In general.* In order to receive either exclusion provided by section 911(a), a qualified individual must elect, separately with respect to each exclusion, to exclude foreign earned income under section 911(a)(1) and the housing cost amount under section 911(a)(2). Any such elections may be made on Form 2555 or on a comparable form. Each election must be filed either with the income tax return, or with an amended return, for the first taxable year of the individual for which the election is to be effective. An election once made remains in effect for that year and all subsequent years unless revoked under paragraph (b) of this section. Each election shall contain information sufficient to determine whether the individual is a qualified individual as provided in section 1.911-2.

\* \* \* \* \* \* \*

(2) *Requirement of a return—*(i) *In general.* In order to make a valid election under this paragraph (a), the election must be made:

(A) With an income tax return that is timely filed (including any extensions of time to file),

---

[3]Although sec. 911(d)(7) was originally effective for taxable years beginning after Dec. 31, 1981 (sec. 111(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 194), it was redesignated sec. 911(d)(8) by sec. 101(c)(1) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2365, 2366, and as such was effective for taxable years after Dec. 31, 1981. Subsequently, sec. 911(d)(8) was further redesignated sec. 911(d)(9) by sec. 1233(b) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2564, which was effective for tax years beginning after Dec. 31, 1986.

(B) With a later return filed within the period prescribed in section 6511(a) amending the foregoing timely filed income tax return, or

(C) With an original income tax return that is filed within one year after the due date of the return (determined without regard to any extension of time to file); this one year period does not constitute an extension of time for any purpose—it is merely a period during which a valid election may be made on a late return.

(ii) *Election for 1982 and 1983 taxable years.* Solely for purposes of paragraph (a)(2)(i)(A) of this section, an income tax return for any taxable year beginning before January 1, 1984 shall be considered timely filed if it is filed on or before July 23, 1985.

Petitioner certainly did not file a timely return on any theory, nor did he in any other manner comply with any of the other possible alternative conditions of these regulations for making a valid election. Petitioner does not contend otherwise. His sole argument is that the regulations themselves are invalid, and that his belated attempt in 1987 to elect the benefits of section 911(a) should prevail. Indeed, in part III of the "stipulation of facts and settled issues" filed by the parties, it is stipulated:

III. UNRESOLVED ISSUE:

The sole issue to be decided by the Court is as follows:

Whether the provisions of Treasury Regulation 1.911-7(a)(2), which impose a timing limitation on a bona fide foreign resident's ability to elect the exclusions of foreign earned income and foreign housing cost amounts under Section 911, are beyond the regulatory authority granted to the Secretary under current Section 911(d)(8), I.R.C. 1986.

We hold that the foregoing provisions of section 1.911-7(a)(2), Income Tax Regs., are valid.

It is quite true, as contended by petitioner, that Congress in 1981 was troubled about the growing competitive pressures that American businesses faced abroad, and we recognize that it wanted to improve our foreign trade by providing increased inducements for the conduct of business abroad and the rendition of services beyond the boundaries of the United States. See General Explanation of the Economic Recovery Tax Act of 1981, prepared by the staff of the Joint Committee on Taxation (December 21, 1981), p. 43. In this connection, it substantially increased the tax benefits available in respect of foreign earned income. And we agree with petitioner that the statute must be construed in the light of the legislative objective. But Congress made

it abundantly plain that the extended benefits that it was conferring were not open-ended. It did not open the flood gates. At the very beginning of section 911(a), the exclusion provided was stated to be available only "At the election" of the taxpayer, and Congress specified various other qualifications and limitations (none of which are applicable here) that could defeat the exclusion.

As to the election itself, section 911(e) provided that it was to apply to the taxable year for which it was made and to all subsequent taxable years unless revoked. But section 911(e) explicitly indicated that upon a revocation the taxpayer may not make another election before the sixth taxable year thereafter. Plainly, Congress was concerned about persons who might be working from time to time in various foreign countries imposing different types of income tax, or none at all, and who might attempt from time to time to switch back and forth between the section 901 foreign tax credit and the section 911(a) exclusion. The provisions of section 911(e)(2) strongly suggest that Congress was determined not to permit the playing of such games with the IRS, particularly, since the IRS could thus be faced with increased difficulties in administering the law.

Provisions establishing rules for the timing and making the section 911(e) election were thus of a high order of importance. However, the Code does not specify how or when the election must be made. But section 911(d)(8) authorizes the Secretary to prescribe "necessary or appropriate" regulations. He has done so in section 1.911-7, Income Tax Regs. That regulation is both necessary and appropriate, and, in our judgment, the timing requirements objected to by petitioner as set forth in section 1.911-7(a)(2), Income Tax Regs., are well within the authority granted to the Secretary by section 911(d)(8) of the Code; no other portions of section 1.911-7 of the regulations are involved.

In this very case, petitioner did not attempt to make his election for 1982 until 1987. To permit a taxpayer to make such a belated election would open the door to ex post facto or retroactive tax planning. We think Congress could hardly have intended to authorize any such potential maneuvering, notwithstanding its interest in promoting foreign trade and encouraging the rendition of services abroad. The regula-

tions, which would prevent any such easy freewheeling are, we think, manifestly reasonable. They certainly should not be condemned as unreasonable, particularly when it is kept in mind that the burden is upon the taxpayer to establish that a regulation is unreasonable rather than upon the Government to prove affirmatively that it is reasonable.

The timing requirements were generous, allowing as one alternative a grace period of one year from the original due date of the return. And even as to the years 1982 and 1983 in respect of which the time for filing the returns (June 15, 1983, and 1984) had already expired when the regulations were finally promulgated (January 23, 1985),[4] an additional period of 6 months (up to July 23, 1985) was allowed within which to make the election. Sec. 1.911-7(a)(2)(ii), Income Tax Regs., *supra* at p. 1209.

The very process undertaken by the Treasury in the formulation and development of these regulations emphasizes its concern for the fairness that characterized the regulations as finally issued. The Secretary first published his proposed regulations on July 20, 1983, in the Federal Register. 48 Fed. Reg. 32007 (1983). After a public hearing on November 15, 1983 (48 Fed. Reg. 47010 (1983)), the final regulations, as promulgated by T.D. 8006, 1985-1 C.B. 229, were published in the Federal Register on January 23, 1985. 50 Fed. Reg. 2959 (1985). As originally proposed, section 1.911-7, Income Tax Regs., provided that the election must be made either with the income tax return or an amended return. It was pointed out in the course of the hearing that in view of difficulties of communication with overseas taxpayers, such time limit was too stringent. The Treasury responded favorably to such criticism and perceptively made the time limits far more liberal in the regulations as finally promulgated. Not only were three alternative time periods provided in section 1.911-7(a)(2)(i), Income Tax Regs., with a 1-year period of grace in the case of the third alternative, but a special provision was added in section 1.911-7(a)(2)(ii), Income Tax Regs., dealing explicitly with the years 1982 and 1983. As to the latter, a period of 6

---

[4]The regulations were approved on behalf of the Secretary on Dec. 21, 1984, filed by the Office of the Federal Register on Jan. 17, 1985, and published in the issue of the Federal Register for Jan. 23, 1985. See 1985-1 C.B. 246.

months from the date of promulgation—until July 23, 1985—was allowed, to take into account the fact that the periods within which the returns for those years could have been timely filed had already expired. The Secretary thus provided for prospective, not retroactive, operation of the new regulations. See discussion of the background of these regulations in 1985-1 C.B. 225 et seq. Far from being arbitrary, these regulations reflect sensitivity on the part of the Treasury to the problem presented, and they can hardly be fairly characterized as unreasonable.

Although it is quite true that a regulation will not survive judicial scrutiny if it is perceived to be unreasonable and "fundamentally at odds with the manifest congressional design" (*United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 26 (1982); *United States v. Cartwright,* 411 U.S. 546 (1973)), that is not the case here. This case is one that calls for the application of the principles comprehensively set forth in respect of Treasury regulations in *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 169 (1981):

> These regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task "of administering the tax laws of the Nation." *United States v. Cartwright,* 411 U.S. 546, 550 (1973); accord, *United States v. Correll,* 389 U.S. 299, 307 (1967); see 26 U.S.C. sec. 7805(a). We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." *United States v. Correll, supra,* at 307; accord, *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 476-477 (1979). To put the same principle conversely, Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948); accord, *Fulman v. United States,* 434 U.S. 528, 533 (1978); *Bingler v. Johnson,* 394 U.S. 741, 749-751 (1969). * * *

We hold that the regulations before us, section 1.911-7(a)(2), Income Tax Regs., are valid, whether regarded merely as interpretative or as legislative in character, notwithstanding that, in our view, they are quite clearly legislative, and are therefore entitled to greater weight than interpretative regulations. See *Estate of Gunland v. Commissioner,* 88 T.C. 1453, 1457 (1987). Moreover, since these regulations would be valid under the Secretary's general authority to promulgate regulations set forth in section 7805, there is even greater reason for sustaining them here in the light of the

specific authority given to the Secretary by section 911(d)(8) in respect of section 911 itself. In the latter situation, "customary deference to Treasury Regulations is particularly appropriate." *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. at 169.

A word on the application of the regulations to the facts of this case. Regardless of the election necessary to exempt petitioner's foreign earned income from tax, he was required to file a timely income tax return for each of the years 1982 and 1983 in any event. The record discloses that he received $9,225 in rents from his two Texas properties in 1982, and $9,600 in rents from those properties as well as $1,523 in interest in 1983. He thus had gross income in each of those years that was substantially in excess of the maximum amount of gross income that he could receive in either year without being required by the then applicable provisions of section 6012(a) to file a return. The mere fact that he had deductions chargeable against his rentals that would reduce his *adjusted* gross income, or his *net* income to a negative amount does not alter the fact that he had gross income in the amounts stated above. Cf. *Lewis v. Commissioner,* a Memorandum Opinion of this Court dated January 17, 1950, 9 T.C.M. 32, 34 (1950), 19 P-H Memo T.C. par. 50,015 at 50-32. Section 6012(a) specifies the minimum amounts of *gross* income, not adjusted gross income or net income, calling for the filing of returns. Petitioner's filing of 1982 and 1983 returns for the first time in 1987 purporting to make the section 911(e) election, after his case had been docketed in the Court, was woefully out of time on any theory, and it would have been wholly unreasonable to keep open the privilege of making the election with his income tax return until that time. There was no basis whatever for his assumption that he was not required to file a return.

Further, the mere fact that the regulations indicate that the election "may be made on Form 2555 or a comparable form" accompanying the income tax return is not unreasonable. The information thus sought for the IRS is to enable it to make sure that the statute is properly complied with. The substance of Form 2555 was set forth in specific detail in the regulations,[5] and only the substance was required to

---

[5]See sec. 1.911-7(a)(1), Income Tax Regs.

be filed with the return, not necessarily Form 2555 itself. However, even if Form 2555 itself were absolutely required, rather than merely its substance, such requirement would be valid. Cf. *Posey v. United States,* 449 F.2d 228, 234 (5th Cir. 1971).

We have carefully examined various other contentions made by petitioner, particularly those based upon comparisons with other provisions of the Code, but find them too remote to be of any persuasive force here. We do not find it necessary or useful to comment upon them.

Finally, petitioner makes a contention on brief, based upon an issue not heretofore raised, either in the pleadings or elsewhere so far as we have been informed—namely, that the Commissioner abused his discretion in refusing to use his authority pursuant to section 1.9100-1(a), Income Tax Regs., to grant petitioner an extension of time to make his section 911(e) election. We could well refuse to consider this point on the ground that it is not properly before us, particularly in view of the stipulation of the parties that the "sole issue" to be decided is the validity of the regulations. However, the Government has undertaken to respond to it, and, in the circumstances, we consider it.

We think that there is no substance whatever to the point. Section 1.9100-1(a), Income Tax Regs., is inapplicable here for at least several reasons. We note particularly one of them that is incontrovertibly dispositive of petitioner's argument. Section 1.9100-1(a), Income Tax Regs., reads as follows:

SEC. 1.9100-1. Extension of time for making certain elections.

(a) *In general.* The Commissioner in his discretion may, upon good cause shown, grant a reasonable extension of the time fixed by the regulations in this chapter for the making of an election or application for relief in respect of tax under subtitle A of the Code provided—

(1) The time for making such election or application is not expressly prescribed by law;

(2) Request for the extension is filed with the Commissioner before the time fixed by the regulations for making such election or application, or within such time thereafter as the Commissioner may consider reasonable under the circumstances; and

(3) It is shown to the satisfaction of the Commissioner that the granting of the extension will not jeopardize the interests of the Government.

For purposes of this section, an application for an extension of time for filing a return under section 6081 is not an application for relief in respect of tax.

Subparagraph (a)(2) requires that the request for the extension be filed "*before the time* fixed by the regulations for making [the] election * * * or within such time *thereafter* as the Commissioner may consider reasonable under the circumstances." (Emphasis supplied.) Petitioner recognizes that he did not file any request for extension, but asks us to treat the Forms 2555 filed with his 1982 and 1983 returns in 1987 as though they qualified as an application for extension. But such request, if indeed it could be treated as such, failed absolutely to come within subparagraph (a)(2) of section 1.9100-1(a), Income Tax Regs., since the form was not filed *before* the time fixed by the regulations for making the election. Enough said.

In view of the fact that the parties have settled all other issues and have stipulated various items to be taken into account in determining petitioner's liability for the years involved as well as the amounts of resulting tax in the event of decision either for petitioner or respondent, and in order to reflect the conclusions reached herein,

*Decision will be entered for the respondent in accordance with the amounts set forth in the stipulation of the parties.*