T.C. Memo. 2015-169

UNITED STATES TAX COURT

NANCY MCDONALD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21543-13.                    Filed August 25, 2015.

P, a U.S. citizen, worked abroad in 2009 and failed to file a
Federal income tax return for 2009. R prepared and filed a substitute
for return ("SFR") for P's 2009 year in January 2012, and in April
2012 R issued to P a statutory notice of deficiency ("NOD"). In May
2012 P filed a Form 1040, "U.S. Individual Income Tax Return", for
2009 and reported $101,244 of income but excluded $23,032,
claiming a foreign earned income exclusion ("FEIE"). With her
return, P sent R a payment of the resulting balance due, and R
processed the return and payment and closed the NOD.

R subsequently audited P's return for 2009 and issued to P a
second NOD which disallowed P's claimed FEIE because she did not
make a valid election under 26 C.F.R. sec. 1.911-7(a)(2), Income Tax
Regs. R filed a motion for partial summary judgment, and P filed an
opposition and a cross-motion for partial summary judgment arguing
that the regulation is invalid.

**[\*2]**  Held:  The Secretary of the Treasury had authority to promulgate the regulation under the specific authority granted to him under I.R.C. sec. 911 as well as under his general authority to promulgate regulations under I.R.C. sec. 7805(d).  The regulation is a valid implementation of the statute.  See Faltesek v. Commissioner, 92 T.C. 1204 (1989).


Steven L. Gremminger, for petitioner.

Han Huang, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  The Internal Revenue Service ("IRS") determined a deficiency of $6,454 in the 2009 income tax of petitioner Nancy McDonald, as well as additions to tax under section 6651(a)(1) and (2)[1] and an accuracy-related penalty under section 6662(a).  Ms. McDonald timely filed a petition for redetermination of the tax, additions to tax, and penalties determined by the IRS in its statutory notice of deficiency ("NOD").  Her petition alleges an address in Washington, D.C.  The case is before the Court on a motion for partial summary

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

**[*3]** judgment filed by respondent, the Commissioner of the IRS, and an opposition and cross-motion for partial summary judgment filed by Ms. McDonald.

The sole issue for decision is whether Ms. McDonald is entitled to the foreign earned income exclusion ("FEIE") under section 911 for tax year 2009. The Commissioner argues that Ms. McDonald is not entitled to the FEIE because she failed to make a timely election in accordance with the provisions of 26 C.F.R. section 1.911-7(a)(2), Income Tax Regs., to exclude her foreign earned income. Ms. McDonald argues that she is entitled to the FEIE because the regulation upon which the Commissioner's contention is based is inconsistent with section 911 and is therefore invalid. Thus, we must decide whether 26 C.F.R. section 1.911-7(a)(2), which establishes periods for making the FEIE election, is valid. We will grant the Commissioner's motion for partial summary judgment and deny Ms. McDonald's motion for partial summary judgment.[2]

## Background

The facts set forth below are based on the pleadings and other pertinent materials in the record. Rule 121(b).

---

[2]We leave for later proceedings the remaining issues in this case, i.e., the additions to tax under section 6651(a)(1) and (2) and the accuracy-related penalty under section 6662(a).

**[*4]**  Ms. McDonald, a U.S. citizen, left the United States in October 2009 to work overseas.  Her Form 1040, "U.S. Individual Income Tax Return", for that year was due on April 15, 2010.  Ms. McDonald did not request an extension of time to file her 2009 return and did not timely file it.  The IRS evidently received, from Ms. McDonald's employer, information about her wages; and in January 2012 the IRS prepared and filed for Ms. McDonald a substitute for return ("SFR") for 2009, pursuant to section 6020(b).  On April 9, 2012, the IRS issued to Ms. McDonald an NOD for 2009 based on the SFR.  The NOD determined a deficiency of $19,449 in tax and additions to tax under sections 6651(a)(1) and (2) and 6654.  Ms. McDonald did not file a petition in the Tax Court challenging that NOD.

Rather, on May 18, 2012, Ms. McDonald filed her Form 1040 for 2009. The Form 1040 reported income of $101,244, but Ms. McDonald attached thereto a Form 2555, "Foreign Earned Income", and claimed thereon an FEIE and excluded $23,032 from her total income.  With her return Ms. McDonald sent the IRS a payment of $3,018, the balance due reported on her return.  The IRS processed Ms. McDonald's return and payment and closed the first NOD in July 2012.  On August 13, 2012, the IRS assessed the tax liability reported on Ms. McDonald's Form 1040 for 2009.

**[\*5]** Subsequently, the IRS selected Ms. McDonald's 2009 return for audit. As a result of the audit, on June 20, 2013, the IRS issued Ms. McDonald a second NOD, upon which this case is based. (Because Ms. McDonald had not filed suit after the first NOD, section 6212(c)(1) did not bar the issuance of the second NOD.) The second NOD disallowed Ms. McDonald's claimed FEIE because she: (i) did not make a valid election and file Form 2555 with a timely filed return; (ii) did not elect to exclude the foreign income on a previous return; and (iii) did not otherwise comply with the procedural rules to make a valid election to exclude the foreign income under 26 C.F.R. section 1.911-7(a)(2).

## Discussion

### I.    Summary judgment standard

Where the material facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). A motion for partial summary judgment may be granted where there is no genuine dispute as to any material fact, and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). A partial summary adjudication is appropriate if some but not all issues in the case are disposed of summarily. See Rule 121(b); Turner Broad.

[*6] <u>Sys., Inc. v. Commissioner</u>, 111 T.C. 315, 323-324 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). Both parties have moved for partial summary judgment; and since we will grant the Commissioner's motion for partial summary judgment, we draw all inferences in favor of Ms. McDonald as non-movant. <u>See</u> <u>infra</u> note 3.

II. <u>Electing the foreign earned income exclusion</u>

    A. <u>Statutory requirements for the FEIE</u>

The sole issue to be decided is whether Ms. McDonald is entitled to the FEIE. Section 911(a) provides that a qualified individual may elect to exclude from gross income the foreign earned income of such individual. To qualify for the FEIE, the taxpayer must satisfy a three-part test: (1) the taxpayer must be a U.S. citizen who is a bona fide resident of a foreign country for an entire taxable year or physically present in a foreign country during at least 330 days out of a 12-month period, sec. 911(d)(1); (2) the taxpayer must have earned income from personal services rendered in a foreign country, sec. 911(d)(2); and (3) the taxpayer's tax home for the period must be outside of the United States, sec.

[*7] 911(d)(3).[3]  Although a taxpayer may satisfy these three requirements, the opening words of section 911(a)--"At the election of a qualified individual"--make clear that the taxpayer must also affirmatively elect to exclude the foreign earned income from his or her gross income.

B.     The timing requirement of the regulation

Section 911(a) is silent on the timing of a valid election.  However, section 911(d)(9) gives the Secretary specific authority to promulgate regulations on the making of an election by mandating that "[t]he Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section"; and section 7805(d) provides that "any election under this title shall be made at such time and in such manner as the Secretary shall prescribe." (Emphasis added.)  Pursuant to this authority, the Secretary promulgated 26 C.F.R.

---

[3]In the Commissioner's response to Ms. McDonald's motion for partial summary judgment, the Commissioner asserts that there are genuine disputes of material fact concerning whether Ms. McDonald satisfied this three-part test. Specifically, the Commissioner asserts that there is a material question of fact whether Ms. McDonald was a "qualified individual" because (he asserts) one cannot conclude from her documents that she was a bona fide resident of a foreign country for an uninterrupted period that includes the entire taxable year or that she was in a foreign country for at least 330 days out of a 12-month period.  The Commissioner also asserts that Ms. McDonald has failed to show that her tax home was in a foreign country.  We need not resolve these factual disputes because we decide the Commissioner's partial summary judgment motion on the legal issue of whether 26 C.F.R. sec. 1.911-7(a)(2)(i) is valid and Ms. McDonald's election was untimely thereunder.

**[\*8]** section 1.911-7(a)(2)(i), which establishes the timing requirements under which a valid election can be made. The regulation provides four alternative timing methods by which a taxpayer may validly make the election:

> (i) In general.--In order to make a valid election under this paragraph (a), the election must be made:

> (A) With an income tax return that is timely filed (including any extensions of time to file),

> (B) With a later return filed within the period prescribed in section 6511(a) amending the foregoing timely filed income tax return,

> (C) With an original income tax return that is filed within one year after the due date of the return (determined without regard to any extension of time to file); this one year period does not constitute an extension of time for any purpose--it is merely a period during which a valid election may be made on a late return, or

> (D) With an income tax return filed after the period described in paragraphs (a)(2)(i)(A), (B), or (C) of this section provided--

> (1) The taxpayer owes no federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached either before or after the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion; or

> (2) The taxpayer owes federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached before the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion.

> (3) A taxpayer filing an income tax return pursuant to paragraph (a)(2)(i)(D)(1) or (2) of this section must type or legibly

**[\*9]** print the following statement at the top of the first page of the Form 1040: "Filed Pursuant to Section 1.911-7(a)(2)(i)(D)."

26 C.F.R. sec. 1.911-7(a)(2)(i).

C.    Deference to agency regulations

To address Ms. McDonald's claim, we must determine whether the timing requirement included in 26 C.F.R. section 1.911-7(a)(2) is valid. In reviewing the validity of regulations, we defer to the agency in accordance with Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55 (2011); Altera Corp. v. Commissioner, 145 T.C. __, __ (slip op. at 38-39) (July 27, 2015). In Mayo Found. the Supreme Court clarified that the standard by which the validity of regulations will be measured--with regard to "general authority" regulations as well as "specific grant of authority" regulations--is the two-step standard of Chevron. Mayo Found., 562 U.S. at 56-57 (quoting Rowan Cos. v. United States, 452 U.S. 247, 253 (1981)). As the Supreme Court stated in Mayo Found., the principles underlying Chevron "apply with full force in the tax context." Id. at 55.

Determining whether a regulation merits deference under Chevron involves a two-step process: We first determine whether Congress has directly spoken to

**[*10]** the precise question at issue. <u>Chevron</u>, 467 U.S. at 842. If the answer is yes, we must give effect to congressional intent. <u>Id.</u> at 842-843. In order to determine whether Congress has directly spoken, we "employ[] traditional tools of statutory construction". <u>United States v. Home Concrete & Supply, LLC</u>, 566 U.S. __, __, 132 S. Ct. 1836, 1844 (2012) (quoting <u>Chevron</u>, 467 U.S. at 843 n.9). If, employing those tools, we determine that Congress has not directly spoken to the precise question at issue, we proceed to the second <u>Chevron</u> step and determine whether the agency's chosen interpretation is a "reasonable interpretation" of the enacted statutory text. <u>Chevron</u>, 467 U.S. at 843-844.[4] If it is a reasonable interpretation, the regulation will stand. It will be ruled invalid only if it is found to be "'arbitrary or capricious in substance, or manifestly contrary to the statute.'" <u>Mayo Found.</u>, 562 U.S. at 53 (quoting <u>Household Credit Servs., Inc. v. Pfennig</u>, 541 U.S. 232, 242 (2004)).

---

[4]As we have recently explained: "<u>Chevron</u> step 2 incorporates the reasoned decisionmaking standard of [<u>Motor Vehicle Mfrs. Ass'n of the U.S. v.</u>] <u>State Farm</u> [<u>Mut. Auto Ins. Co.</u>, 463 U.S. 29 (1983)]. <u>See</u> <u>Judulang</u> [<u>v. Holder</u>, 565 U.S. ___, ___, 132 S. Ct. 476 (2011)], 565 U.S. at ___ n.7, 132 S. Ct. at 483 (stating that, under either standard, the 'analysis would be the same, because under <u>Chevron</u> step two, we ask whether an agency interpretation is "arbitrary or capricious in substance"' (fn. ref. omitted) (quoting <u>Mayo Found.</u>, 562 U.S. at 53))". <u>Altera Corp. v. Commissioner</u>, 145 T.C. __, __ (slip op. at 47-48) (July 27, 2015).

**[*11]** III.      Ms. McDonald's contentions

Ms. McDonald preliminarily contends that she satisfied the timing requirement of the regulation and that her failure to add, to the top of the first page of her return, the statement required by 26 C.F.R. section 1.911-7(a)(2)(i)(D)(3) does not negate her compliance.  Alternatively, Ms. McDonald challenges the validity of the regulation on two bases:  she argues that the regulation is an invalid interpretation of the statute because the statute creates the only legal standard that she needs to satisfy and the additional timing requirement that the regulation imposes is absent from the statute.  Next, she argues that the 12-month deadline in 26 C.F.R. section 1.911-7(a)(2)(i)(C) is arbitrary and "is neither necessary or appropriate to carry out the purposes of Section 911."  The gravamen of Ms. McDonald's challenge is that the regulation is invalid.

IV.    Analysis

A.      Compliance with 26 C.F.R. section 1.911-7(a)(2)(i)(D)(3)

Ms. McDonald argues that had she simply included, on the top of the first page of her return, the statement required by subdivision (i)(D)(3) of the regulation, i.e., "Filed Pursuant to Section 1.911-7(a)(2)(i)(D)", then she would have made a valid election under subdivision (i)(D) and would not owe the tax determined in the NOD.  She seems to argue that the omission of this statement

**[*12]** should be excused because her return preparer did not advise her to include it. However, this argument ignores the other requirements of subdivision (i)(D)(1) and (2), one of which must be complied with before subdivision (i)(D)(3) can apply.

Subdivision (i)(D)(1) was unavailable to Ms. McDonald because she was a not a taxpayer who "owes no federal income tax", as subdivision (i)(D)(1) requires; rather, she did owe Federal income tax after taking the exclusion into account. Similarly, Ms. McDonald could not have made a valid election under subdivision (i)(D)(2), because it requires that the taxpayer "file[ ] Form 1040 with Form 2555 * * * before the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion." Instead, the IRS discovered that she had failed to make a valid election before she filed her Form 1040 for 2009. Specifically, the IRS discovered that she had failed altogether to file any return--and thus discovered that she had failed to file Form 2555--no later than the date on which it issued the SFR in January 2012, i.e., months before Ms. McDonald filed her first Form 1040 for 2009 in May 2012.

Subdivision (i)(D)(3) does not provide a separate mechanism for making an FEIE election but rather is an additional requirement for a taxpayer who otherwise meets the requirements of subdivision (i)(D)(1) or (2). Ms. McDonald did not

[*13] qualify under subdivision (i)(D)(1) or (2), and she failed to comply with subdivision (i)(D)(3).

    B.    <u>The addition of a deadline (Chevron step 1)</u>

Ms. McDonald's principal contention, however, is that the deadline in the regulation is not valid. To evaluate this contention, we address <u>Chevron</u>'s first step by observing that a simple reading of the statutory text shows that, in section 911, Congress did not directly address the timing question at issue. The statute provides that, in order to obtain the FEIE, the taxpayer must elect it; but the statute does not impose any time limit within which the taxpayer must do so. Thus, because Congress did not directly address the timing issue, we must proceed to <u>Chevron</u>'s second step to determine whether the Secretary's interpretation is reasonable.

It appears that Ms. McDonald disagrees and would, in effect, halt the analysis at step 1. Her argument questions whether, in section 911, the "silence" about any deadline really creates a gap that can be legitimately filled by regulation. Ms. McDonald seems to suggest that the statute, by including no deadline, reflects a congressional intention that there be no deadline.

It is true that section 911(d)(9) makes no mention of the timing of an election but rather provides: "The Secretary shall prescribe such regulations as

**[*14]** may be necessary or appropriate to carry out the purposes of this section, including regulations providing rules" not concerning the timing of an election. However, section 911(d)(9) is a specific instance of a principle enacted in section 7805(d), which provides more generally:

> SEC. 7805(d). Manner of Making Elections Prescribed by Secretary.--<u>Except to the extent otherwise provided</u> by this title, any election under this title shall be made <u>at such time</u> and in such manner as the Secretary shall prescribe. [Emphasis added.]

Section 911(d)(9) does not provide otherwise[5] and did not deprive the Secretary of the authority (indeed, the responsibility) of providing the time of making an FEIE election. Therefore, the general rule of section 7805(d) stands: "[A]ny election under this title shall be made <u>at such time</u> * * * as the Secretary shall prescribe." (Emphasis added.)

Since we thus conclude that the statute does authorize the Secretary to impose a deadline, we proceed, under the second step of the <u>Chevron</u> paradigm, to examine the reasonableness of the multiple deadlines that the Secretary did establish in the regulation at issue here.

---

[5]On the contrary, as we have previously explained in regard to the section 911 election, various details in section 911 show a definite congressional understanding that "[p]rovisions establishing rules for the timing and making the section 911(e) election were thus of a high order of importance" for such an election. <u>See</u> <u>Faltesek v. Commissioner</u>, 92 T.C. 1204, 1210 (1989).

**[\*15]** C.     <u>The reasonableness of the regulation's deadlines (Chevron step 2)</u>

Ms. McDonald contends that the regulation's specific rules for electing the FEIE are unreasonable and therefore invalid.  This Court has previously addressed and rejected the same challenge to this regulation.  In <u>Faltesek v. Commissioner</u>, 92 T.C. 1204 (1989), the Court held that the alternative periods set forth in 26 C.F.R. section 1.911-7(a)(2)(i)(A)-(C)[6] were not arbitrary or unreasonable and were within the specific authority granted to the Secretary under section 911[7] as well as the Secretary's general authority to promulgate regulations under section 7805.  See <u>Faltesek v. Commissioner</u>, 92 T.C. at 1212-1213.  We opined that the timing requirements in the regulation were "generous" because they provided multiple alternative methods for making the election.  <u>Id.</u> at 1211.

---

[6]The <u>Faltesek</u> case addressed an earlier version of 26 C.F.R. section 1.911-7(a)(2)(i) that included only subdivision (i)(A) through (C).  The regulation was subsequently amended to include subdivision (i)(D).  Nonetheless, we find the rationale and holding of <u>Faltesek</u> equally applicable here, because the amended regulation with new subdivision (i)(D) is even more permissive than the former version.  The amended regulation provides a taxpayer with an additional method for making the election if the taxpayer does not otherwise meet the requirements of subdivision (i)(A) through (C).  Thus, if the pre-amendment version of the regulation was reasonable, as we held in <u>Faltesek</u>, then the more permissive amended version must also be reasonable.

[7]During the years at issue in <u>Faltesek</u>, the predecessor to current section 911(d)(9) was found in section 911(d)(8).

**[\*16]** In holding that the regulation was not arbitrary or unreasonable, the Court found it significant that the Secretary responded favorably to public comment and criticism that the originally proposed periods were too narrow and did not account for the difficulties of communicating with overseas taxpayers. Id. The Treasury Department adopted final regulations that had more liberal periods than those originally proposed. Id. "Far from being arbitrary, these regulations reflect sensitivity on the part of the Treasury to the problem presented, and they can hardly be fairly characterized as unreasonable." Id. at 1212. Thus, these regulations are certainly not "arbitrary or capricious in substance". Mayo Found., 562 U.S. at 53 (quoting United States v. Mead Corp., 533 U.S. 218, 227 (2001)).

Ms. McDonald attempts to distinguish Faltesek on its facts, but the factual distinctions she attempts to draw between the Faltesek case and her own are immaterial. The Faltesek decision was based upon a legal challenge to the validity of the regulation, and its holding and rationale apply with full force here. Additionally, the regulation's subsequent amendment adding subdivision (i)(D) further supports the rationale and holding in Faltesek. The addition of subdivision (i)(D) gave taxpayers seeking to make the election a fourth alternative (and even less restrictive) period in which to do so. The inclusion of subdivision (i)(D) only bolsters our conclusion that the regulation is reasonable.

**[\*17]** We hold, as we did in <u>Faltesek</u>, that the Secretary's interpretation and implementation of the statute is valid, because it reasonably implements Congress's specific grant of authority in section 911(d)(9) to prescribe regulations that are necessary and appropriate to carry out the purposes of the statute, and Congress's general grant of authority under section 7805(d) to prescribe rules for the time and manner of making elections under the Code. The regulation provides taxpayers with four alternative methods by which they can timely elect the FEIE. The fact that the Secretary could have chosen longer periods within which to permit the election is of no consequence, because the alternative methods with four varying periods are reasonable.

We will therefore grant the Commissioner's motion for partial summary judgment.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.