*480 Justice Breyer
delivered the opinion of the Court, except as to Part IV-C.
Ordinarily, the Government must assess a deficiency against a taxpayer within “3 years after the return was filed.” 26 U. S. C. § 6501(a) (2000 ed.). The 3-year period is extended to 6 years, however, when a taxpayer “omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return.” § 6501(e)(1)(A) (emphasis added). The question before us is whether this latter provision applies (and extends the ordinary 3-year limitations period) when the taxpayer overstates his basis in property that he has sold, thereby understating the gain that he received from its sale. Following Colony, Inc. v. Commissioner, 357 U. S. 28 (1958), we hold that the provision does not apply to an overstatement of basis. Hence the 6-year period does not apply.
I
For present purposes the relevant underlying circumstances are not in dispute. We consequently assume that (1) the respondent taxpayers filed their relevant tax returns in April 2000; (2) the returns overstated the basis of certain property that the taxpayers had sold; (3) as a result the returns understated the gross' income that the taxpayers received from the sale of the property; and (4) the understatement exceeded the statute’s 25% threshold. We also take as undisputed that the Commissioner asserted the relevant deficiency within the extended 6-year limitations period, but *481 outside the default 3-year period. Thus, unless the 6-year statute of limitations applies, the Government’s efforts to assert a tax deficiency came too late. Our conclusion — that the extended limitations period does not apply — follows directly from this Court’s earlier decision in Colony.
II
In Colony this Court interpreted a provision of the Internal Revenue Code of 1939, the operative language of which is identical to the language now before us. The Commissioner there had determined
“that the taxpayer had understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the ‘basis’ of such lots by erroneously including in their cost certain unallowable items of development expense.” Id., at 30.
The Commissioner’s assessment came after the ordinary 3-year limitations period had run. And, it was consequently timely only if the taxpayer, in the words of the 1939 Code, had “omit[ted] from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return . . . .” 26 U. S. C. § 275(c) (1940 ed.). The Code provision applicable to this case, adopted in 1954, contains materially indistinguishable language. See § 6501(e)(1)(A) (2000 ed.) (same, but replacing “per centum” with “percent”). See also Appendix, infra.
In Colony this Court held that taxpayer misstatements, overstating the basis in property, do not fall within the scope of the statute. But the Court recognized the Commissioner’s contrary argument for inclusion. 357 U. S., at 32. Then as now, the Code itself defined “gross income” in this context as the difference between gross revenue (often the amount the taxpayer received upon selling the property) and basis (often the amount the taxpayer paid for the property). Compare 26 U. S. C. §§22, 111 (1940 ed.) with §§ 61(a)(3), *482 1001(a) (2000 ed.)- And, the Commissioner pointed out, an overstatement of basis can diminish the “amount” of the gain just as leaving the item entirely off the return might do. 357 U. S., at 32. Either way, the error wrongly understates the taxpayer’s income.
But, the Court added, the Commissioner’s argument did not fully account for the provision’s language, in particular the word “omit.” The key phrase says “omits ... an amount.” The word “omits” (unlike, say, “reduces” or “understates”) means “ ‘[t]o leave out or unmentioned; not to insert, include, or name.’ ” Ibid, (quoting Webster’s New International Dictionary (2d ed. 1939)). Thus, taken literally, “omit” limits the statute’s scope to situations in which specific receipts or accruals of income are left out of the computation of gross income; to inflate the basis, however,, is not to “omit” a specific item, not even of profit.
While finding this latter interpretation of the language the “more plausiblfe],” the Court also noted that the language was not “unambiguous.” Colony, 357 U. S., at 33. It then examined various congressional Reports discussing the relevant statutory language. It found in those Reports
“persuasive indications that Congress merely had in mind failures to report particular income receipts and accruals, and did not intend the [extended] limitation to apply whenever gross income was understated . . . .” Id., at 35.
This “history,” the Court said, “shows ... that the Congress intended an exception to the usual three-year statute of limitations only in the restricted type of situation already described,” a situation that did not include overstatements of basis. Id., at 36.
The Court wrote that Congress, in enacting the provision,
“manifested no broader purpose than to give the Commissioner an additional two [now three] years to investigate tax returns in cases where, because of a taxpayer’s *483 omission to report some taxable item, the Commissioner is at a special disadvantage .. . [because] the return on its face provides no clue to the existence of the omitted item.... [W]hen, as here [i. e., where the overstatement of basis is at issue], the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage . . . whether the error be one affecting ‘gross income’ or one, such as overstated deductions, affecting other parts of the return.” Ibid, (emphasis added).
Finally, the Court noted that Congress had recently enacted the Internal Revenue Code of 1954. And the Court observed that “the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A),” id., at 37, i. e., the provision relevant in this present case.
III
In our view, Colony determines the outcome in this case. The provision before us is a 1954 reenactment of the 1939 provision that Colony interpreted. The operative language is identical. It would be difficult, perhaps impossible, to give the same language here a different interpretation without effectively overruling Colony, a course of action that basic principles of stare decisis wisely counsel us not to take. John R. Sand & Gravel Co. v. United States, 552 U. S. 130, 139 (2008) (“[SJtare decisis in respect to statutory interpretation has special force, for Congress remains free to alter what we have done” (internal quotation marks omitted)); Patterson v. McLean Credit Union, 491 U. S. 164, 172-173 (1989).
The Government, in an effort to convince us to interpret the operative language before us differently, points to differences in other nearby parts of the 1954 Code. It suggests that these differences counsel in favor of a different interpretation than the one adopted in Colony. For example, the *484 Government points to a new provision, § 6501(e)(l)(A)(i), which says:
“In the case of a trade or business, the term ‘gross income’ means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to the diminution by the cost of such sales or services.”
If the section’s basic phrase “omi[ssion] from gross income” does not apply to overstatements of basis (which is what Colony held), then what need would there be for clause (i), which leads to the same result in a specific subset of cases?
And why, the Government adds, does a later paragraph, referring to gifts and estates, speak of a taxpayer who “omits . . . items includible in [the] gross estate”? See § 6501(e)(2) (emphasis added). By speaking of “items” there does it not imply that omission of an “amount” covers more than omission of individual items — indeed that it includes overstatements of basis, which, after all, diminish the amount of the profit that should have been reported as gross income?
In our view, these points are too fragile to bear the significant argumentative weight the Government seeks to place upon them. For example, at least one plausible reason why Congress might have added clause (i) has nothing to do with any desire to change the meaning of the general rule. Rather when Congress wrote the 1954 Code (prior to Colony), it did not yet know how the Court would interpret the provision’s operative language. At least one lower court had decided that the' provision did not apply to overstatements about the cost of goods that a business later sold. See Uptegrove Lumber Co. v. Commissioner, 204 F. 2d 570 (CA3 1953). But see Reis v. Commissioner, 142 F. 2d 900, 902-903 (CA6 1944). And Congress could well have wanted to ensure that, come what may in the Supreme Court, Upte-grove’s interpretation would remain the law where a “trade or business” was at issue.
*485 Nor does our interpretation leave clause (i) without work to do. TRW Inc. v. Andrews, 534 U. S. 19, 31 (2001) (noting canon that statutes should be read to avoid making any provision “superfluous, void, or insignificant” (internal quotation marks omitted)). That provision also explains how to calculate the denominator for purposes of determining whether a conceded omission amounts to 25% of “gross income.” For example, it tells us that a merchant who fails to include $10,000 of revenue from sold goods has not met the 25% test if total revenue is more than $40,000, regardless of the cost paid by the merchant to acquire those goods. But without clause (i), the general statutory definition of “gross income” requires subtracting the cost from the sales price. See 26 U. S. C. §§ 61(a)(3), 1012. Under such a definition of “gross income,” the calculation would take (1) total revenue from sales, $40,000, minus (2) “the cost of such sales,” say, $25,000. The $10,000 of revenue would thus amount to 67% of the “gross income” of $15,000. And the clause does this work in respect to omissions from gross income irrespective of our interpretation regarding overstatements of basis.
The Government’s argument about subsection (e)(2)’s use of the word “item” instead of “amount” is yet weaker. The Court in Colony addressed a similar argument about the word “amount.” It wrote:
“The Commissioner states that the draftsman’s use of the word ‘amount’ (instead of, for example, ‘item’) suggests a concentration on the quantitative aspect of the error — that is whether or not gross income was understated by as much as 25%.” 357 U. S., at 32.
But the Court, while recognizing the Commissioner’s logic, rejected the argument (and the significance of the word “amount”) as insufficient to prove the Commissioner’s conclusion. And the addition of the word “item” in a different subsection similarly fails to exert an interpretive force sufficiently strong to affect our conclusion. The word’s appear- *486 anee in subsection (e)(2), we concede, is new. But to rely in the case before us on this solitary word change in a different subsection is like hoping that a new batboy will change the outcome of the World Series.
IV
A
Finally, the Government points to Treasury Regulation § 301.6501(e)-l, which was promulgated in final form in December 2010. See 26 CFR §801.6501(e)-l (2011). The regulation, as relevant here, departs from Colony and interprets the operative language of the statute in the Government’s favor. The regulation says that “an understated amount of gross income resulting from an overstatement of unre-covered cost or other basis constitutes an omission from gross income.” § 301.6501(e)-l(a)(l)(iii). In the Government’s view this new regulation in effect overturns Colony’s interpretation of this statute.
The Government points out that the Treasury Regulation constitutes “an agency’s construction of a statute which it administers.” Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 842 (1984). See also Mayo Foundation for Medical Ed. and Research v. United States, 562 U. S. 44 (2011) (applying Chevron in the tax context). The Court has written that a “court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute . . ..” National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 982 (2005) (emphasis added). And, as the Government notes, in Colony itself the Court wrote that “it cannot be said that the language is unambiguous.” 357 U. S., at 33. Hence, the Government concludes, Colony cannot govern the outcome in this case. The question, rather, is whether the agency’s construction is a “permissible construction of the *487 statute.” Chevron, supra, at 843. And, since the Government argues that the regulation embodies a reasonable, hence permissible, construction of the statute, the Government believes it must win.
B
We do not accept this argument. In our view, Colony has already interpreted the statute, and there is no longer any different construction that is consistent with Colony and available for adoption by the agency.
C
The fatal flaw in the Government’s contrary argument is that it overlooks the reason why Brand X held that a “prior judicial construction,” unless reflecting an “unambiguous” statute, does not trump a different agency construction of that statute. 545 U. S., at 982. The Court reveals that reason when it points out that “it is for agencies, not courts, to fill statutory gaps.” Ibid. The fact that a statute is unambiguous means that there is “no gap for the agency to fill” and thus “no room for agency discretion.” Id., at 982-983.
In so stating, the Court sought to encapsulate what earlier opinions, including Chevron, made clear. Those opinions identify the underlying interpretive problem as that of deciding whether, or when, a particular statute in effect delegates to an agency the power to fill a gap, thereby implicitly taking from a court the power to void a reasonable gap-filling interpretation. Thus, in Chevron the Court said that, when *488 See also United States v. Mead Corp., 533 U. S. 218, 229 (2001); Smiley v. Citibank (South Dakota), N. A., 517 U. S. 735, 741 (1996); INS v. Cardoza-Fonseca, 480 U. S. 421, 448 (1987); Morton v. Ruiz, 415 U. S. 199, 231 (1974).
*487 “Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. . . . Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. [But in either instance], a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.” 467 U. S., at 843-844.
*488 Chevron and later cases find in unambiguous language a clear sign that Congress did not delegate gap-filling authority to an agency; and they find in ambiguous language at least a presumptive indication that Congress did delegate that gap-filling authority. Thus, in Chevron the Court wrote that a statute’s silence or ambiguity as to a particular issue means that Congress has not “directly addressed the precise question at issue” (thus likely delegating gap-filling power to the agency). 467 U. S., at 843. In Mead the Court, describing Chevron, explained:
“Congress ... may not have expressly delegated authority or responsibility to implement a particular provision or fill a particular gap. Yet it can still be apparent from the agency’s generally- conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law, even one about which Congress did not actually have an intent as to a particular result.” 533 U. S., at 229 (internal quotation marks omitted).
Chevron added that “[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” 467 U. S., at 843, n. 9 (emphasis added).
As the Government points out, the Court in Colony stated that the statutory language at issue is not “unambiguous.” 357 U. S., at 33. But the Court decided that case nearly 30 years before it decided Chevron. There is no reason to believe that the linguistic ambiguity noted by Colony reflects a post-Chevron conclusion that Congress had delegated gap- *489 filling power to the agency. At the same time, there is every reason to believe that the Court thought that Congress had “directly spoken to the precise question at issue,” and thus left “[no] gap for the agency to fill.” Chevron, supra, at 842-843. . -,
For one thing, the Court said that the taxpayer had the better side of the textual argument. Colony, 357 U. S., at 33. For another, its examination of legislative history led it to believe that Congress had decided the question definitively, leaving no room for the agency to reach a contrary result. It found in that history “persuasive indications” that Congress intended overstatements of basis to fall outside the statute’s scope, and it said that it was satisfied that Congress “intended an exception . . . only in the restricted type of situation” it had already described. Id., at 35-36. Further, it thought that the Commissioner’s interpretation (the interpretation once again advanced here) would “create a patent incongruity in the tax law.” Id., at 36-37. And it reached this conclusion despite the fact that, in the years leading up to Colony, the Commissioner had consistently advocated the opposite in the circuit courts. See, e. g., Uptegrove, 204 F. 2d 570; Reis, 142 F. 2d 900; Goodenow v. Commissioner, 238 F. 2d 20 (CA8 1956); American Liberty Oil Co. v. Commissioner, 1 T. C. 386 (1942). Cf. Staff v. Commissioner, 220 F. 2d 65 (CA9 1955); Davis v. Hightower, 230 F. 2d 549 (CA5 1956). Thus, the Court was aware it was rejecting the expert opinion of the Commissioner of Internal Revenue. And finally, after completing its analysis, Colony found its interpretation of the 1939 Code “in harmony with the [now] unambiguous language” of the 1954 Code, which at a minimum suggests that the Court saw nothing in the 1954 Code as inconsistent with its conclusion. 357 U. S., at 37.
It may be that judges today would use other methods to determine whether Congress left a gap to fill. But that is beside the point. The question is whether the Court in Colony concluded that the statute left such a gap. And, in our *490 view, the opinion (written by Justice Harlan for the Court) makes clear that it did not.
Given principles of stare decisis, we roust follow that interpretation. And there being no gap to fill, the Government’s gap-filling regulation cannot change Colony’s interpretation of the statute. We agree with the taxpayers that overstatements of basis, and the resulting understatements of gross income, do not trigger the extended limitations period of § 6501(e)(1)(A). The Court of Appeals reached the same conclusion. See 634 F. 3d 249 (CA4 2011). And its judgment is affirmed.

It is so ordered.

APPENDIX
We reproduce the applicable sections of the two relevant versions of the U. S. Code below. Section 6501 was amended and reorganized in 2010. See Hiring Incentives to Restore Employment Act, § 513,124 Stat. 111. But the parties agree that the amendments do not affect this case. We therefore have referred to, and reproduce here, the section as it appears in the 2000 edition of the U. S. Code.
Title 26 U. S. C. §275 (1940 ed.)
“Period of limitation upon assessment and collection,
[[Image here]]
“(a) General rule.
“The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
[[Image here]]
“(c) Omission from gross income.
“If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may *491 be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.”
Title 26 U. S. C. §6501 (2000 ed.)
“Limitations on assessment and collection.
“(a) General rule
“Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. . . .
[[Image here]]
“(e) Substantial omission of items
“Except as otherwise provided in subsection (c)—
“(1) Income taxes
“In the case of any tax imposed by subtitle A—
“(A) General rule
“If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
“(i) In the case of a trade or business, the term ‘gross income’ means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and
*492 “(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.
[[Image here]]
“(2) Estate and gift taxes
“In the case of a return of estate tax under chapter 11 or a return of gift tax under chapter 12, if the taxpayer omits from the gross estate or from the total amount of the gifts made during the period for which the return was filed items includible in such gross estate or such total gifts, as the case may be, as exceed in amount 25 percent of the gross estate stated in the return or the total amount of gifts stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. ...”