PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KAMAL PATEL, a/k/a Kamalbhai
Kanti Patel,

*Plaintiff-Appellant,*

v.

JANET NAPOLITANO; JONATHAN R.
SCHARFEN; ERIC HOLDER; HARLEY
LAPPIN,

*Defendants-Appellees.*

No. 11-6386

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, Chief District Judge.
(5:10-ct-03088-D)

Argued: October 23, 2012

Decided: January 25, 2013

Before GREGORY, SHEDD, and DAVIS, Circuit Judges.

---

Affirmed by published opinion. Judge Gregory wrote the majority opinion, in which Judge Shedd joined. Judge Davis wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Stephanie D. Taylor, JONES DAY, Pittsburgh, Pennsylvania, for Appellant. Seth Morgan Wood, OFFICE

OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant. Thomas G. Walker, United States Attorney, R. A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.

## OPINION

GREGORY, Circuit Judge:

Kamal Patel, a permanent resident alien and federal inmate, appeals the dismissal of his action under 8 U.S.C. § 1503(a) for a judgment declaring him a United States national. Patel alleges that he is a United States national because he applied for citizenship, registered for the Selective Service, and declared his permanent allegiance to various United States officials. Because we hold that these facts fail to allege United States nationality under § 1503(a), we affirm the dismissal.

I.

We set forth the facts as alleged in Patel's amended complaint. Patel is a federal inmate who has resided in the United States since the age of eleven and has been a permanent resident for almost twenty-five years. He registered for the Selective Service at eighteen. He has sworn an oath of allegiance to the United States and submitted evidence of his oath to an immigration judge, the President of the United States, the Secretary of State, and the Attorney General. Nearly every member of his family is a United States citizen or permanent resident. Patel applied for citizenship, but he does not claim to have completed the naturalization process. Removal proceedings have not been initiated against him.

Because the Federal Bureau of Prisons classifies Patel as an alien, he is ineligible for a number of prison rehabilitation programs, including prerelease classes and community confinement. In an effort to become eligible for those programs, he brought this action seeking to be declared a United States national under 8 U.S.C. § 1503(a) against the Secretary of Homeland Security, the Director of the United States Citizenship and Immigration Services, the Attorney General of the United States, and the Director of the Federal Bureau of Prisons.

The district court dismissed Patel's complaint under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Rather than addressing Patel's § 1503(a) claim, the court misconstrued the complaint to assert a habeas claim under 28 U.S.C. § 2255 and a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The court reasoned that these claims failed as a matter of law because inmates do not have a constitutional right to participate in rehabilitative programs. Patel timely appealed.

## II.

Although the district court failed to address Patel's § 1503(a) claim, we examine the record de novo to determine whether he states a claim. *See Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010).

Section 1503(a), a provision of the Immigration and Nationality Act ("INA"), provides that any person within the United States who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency . . . upon the ground that he is not a national of the United States," may bring an action against the relevant department or agency head for "a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a) (2006). An action may not be brought if the

person's status as a national became an issue "by reason of, or in connection with any removal proceeding" or "is in issue in any such removal proceeding." *Id.*

Because § 1503(a) does not specify when a person should be declared a "national of the United States," we look to the nationality provisions of the INA for guidance. The INA defines the term "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." *Id.* § 1101(a)(22). The INA goes on to specify the means by which United States nationality may be acquired, which are limited to birth and naturalization. *Id.* §§ 1401-1409 ("Nationality at Birth and Collective Naturalization"), §§ 1421-1459 ("Nationality Through Naturalization"). Persons born in the United States, or, under certain circumstances, abroad to United States citizen parents, are "nationals and citizens of the United States at birth." *Id.* § 1401. Persons born in an outlying possession of the United States (American Samoa or Swains Island), or abroad to noncitizen national parents, are "nationals, but not citizens, of the United States at birth." *See id.* § 1408, § 1101(a)(29). For those not born United States nationals, the only means provided by the INA for acquiring United States nationality is naturalization. *See id.* §§ 1421-1459.

Patel does not claim to have acquired United States nationality through birth or naturalization. Rather, he argues that he qualifies as a United States national under the definition provided in § 1101(a)(22)(B), as interpreted by this Court in *United States v. Morin*, 80 F.3d 124, 126 (4th Cir. 1996). In *Morin*, we held that a permanent resident alien who had applied for citizenship was a United States national under § 1101(a)(22), which was cross-referenced by a criminal statute. 80 F.3d at 126. Without addressing whether the alien satisfied any of the statutory procedures for acquiring United States nationality, we simply reasoned:

> A "national of the United States" may [ ] be "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). The district court found that because Dr. Soto was a permanent resident alien of the United States who had applied for United States citizenship, he was indeed "a national of the United States." We agree—an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself.

*Id.*

Patel argues that he qualifies as a United States national under *Morin* because he has demonstrated his allegiance to the United States by applying for citizenship, registering for the Selective Service, and providing evidence of his oath of allegiance to United States government officials. Although we agree with Patel that he would state a claim under *Morin*'s interpretation of § 1101(a)(22)(B), for the reasons explained below, we conclude that *Morin*'s interpretation does not control over the contrary, post-*Morin* interpretation of the statute by the Board of Immigration Appeals (BIA).

As a threshold matter, we emphasize that the statutory provision at issue—8 U.S.C. § 1101(a)(22)—is a provision of the INA. The INA provides that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of [the statute]" and that the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). Under the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), when Congress delegates authority to the executive department to administer a statute, the executive department's interpretation of ambiguous statutory provisions is entitled to "controlling weight," unless that interpretation is "arbitrary, capricious, or manifestly contrary to the statute." 467 U.S. at 843-44. Thus,

because the BIA possesses delegated authority from the Attorney General to administer the INA, "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms [in the INA] concrete meaning through a process of case-by-case adjudication." *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448-49 (1987)).

The BIA, for its part, has long rejected the interpretation of § 1101(a)(22) that we advanced in *Morin*. *See Matter of Tuitasi*, 15 I. & N. Dec. 102, 103 (BIA 1974) (holding that § 1101(a)(22)(B) does not confer nationality on aliens who claim only to owe permanent allegiance to the United States). The BIA reaffirmed this position in *In re Navas-Acosta*, 23 I. & N. Dec. 586, 588 (BIA 2003), which was decided after *Morin*. Drawing on the historical meaning of the word "national" and the statutory framework of the INA, the BIA concluded that § 1101(a)(22) does not provide a method for acquiring United States nationality; rather, "nationality under the Act may be acquired only through birth or naturalization." *Navas-Acosta*, 23 I. & N. Dec. at 588. Referencing the specific language of § 1101(a)(22)(B), the BIA explained that "whether one 'owes permanent allegiance to the United States[ ]' is not simply a matter of individual choice. Instead, it reflects a legal relationship between an individual and a sovereign." *Id.* at 587-88 (internal citation omitted). That relationship may not be created through unilateral declarations of allegiance, but rather, may only arise in "compliance with the conditions set by Congress." *Id.* at 588.

In *Morin*, we did not so much as mention the BIA's interpretation of § 1101(a)(22), much less decide the level of deference it should command. In a subsequent decision, however, we clarified that the BIA's interpretation is entitled to *Chevron* deference. *See Fernandez v. Keisler*, 502 F.3d 337, 343-47, 349-51 (4th Cir. 2007). *Fernandez* was a removal case in which the petitioner, a permanent resident alien, claimed to be a United States national under *Morin*

because he had applied for citizenship, while the BIA argued that he was an alien subject to removal because he had not completed the naturalization process. *Fernandez*, 502 F.3d at 339-40. To resolve the question, we first determined that the *Chevron* framework extends to the BIA's interpretation of the INA even in nationality claims.[1] *Id.* at 342-46. We then determined that § 1101(a)(22)(B) is ambiguous because Congress did not "directly address[ ] the precise question" of when a person should be deemed to owe permanent allegiance to the United States. *Id.* at 348 (quoting *Chevron*, 467 U.S. at 843)). Then, after analyzing the historical meaning of the term "national" and the text and structure of the INA, we concluded that the BIA's interpretation should be given controlling weight because it is not "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 351 (quoting *Chevron*, 467 U.S. at 844).

In *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), the Supreme Court held that "[b]efore a judicial construction of a statute, whether contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction." 545 U.S. at 985. Applying that principle in *Fernandez*, we concluded that *Morin* did not trump the BIA's interpretation of § 1101(a)(22) because *Morin* "did not hold that its interpretation was the only one possible." *Fernandez*, 502 F.3d at 348. *Morin* merely assumed that "§ 1101(a)(22) confers, rather than describes, nationality . . . without saying anything, one way or the other, about whether the statute dictated such an interpretation." *Id.* "[F]aced with the question of whether a noncitizen's natural-

---

[1]In so ruling, we disagreed with some of our sister circuits, which have declined to afford *Chevron* deference to the BIA's interpretation of the INA in nationality claims, reasoning that Congress placed the determination of nationality claims exclusively in the hands of the courts. *See Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004); *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 967 (9th Cir. 2003).

ization application is enough to confer nationality," the *Morin* court "settled upon what it thought was, at the least, a sensible construction of [the statute] but it did not hold that its interpretation was the only one possible." *Id.*

We are bound by our holding in *Fernandez* that the BIA's interpretation of § 1101(a)(22) must be given controlling weight under *Chevron* and *Brand X*, notwithstanding *Morin*. That issue was a question of first impression before the *Fernandez* court, which we are not free to revisit. As we explained in *Fernandez*, although *Morin* did not need to say in "so many magic words" that its interpretation was the only one permissible, the court's statutory analysis, admittedly without having the benefit of *Brand X*, fell short of showing "that the plain language of the statute was controlling and that there existed no room for contrary agency interpretation." *Fernandez*, 502 F.3d at 347-48.

We thus conclude that Patel cannot state a claim to be a United States national under *Morin* because we must defer to the BIA's contrary, post-*Morin* interpretation of § 1101(a)(22). *See In re Navas-Acosta*, 23 I. & N. Dec. 586, 588 (BIA 2003). The BIA has not changed its position that § 1101(a)(22) does not confer nationality on aliens who claim only to have demonstrated permanent allegiance to the United States. Under *Brand X*, we must defer to the BIA's interpretation. *See Brand X*, 545 U.S. at 985. Any claim Patel might have under *Morin* is therefore foreclosed.

The Supreme Court's recent decision in *U.S. v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012), does not alter our conclusion. In *Home Concrete*, the Court ruled that its prior decision in *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), controlled over a contrary interpretation of the tax code by the IRS Commissioner. *Home Concrete*, 132 S. Ct. at 1844. Although *Colony*, which was decided thirty years before *Chevron*, acknowledged that the statutory text at issue was not "unambiguous," the *Home Concrete* plurality rea-

soned that "the linguistic ambiguity noted" did not reflect "a post-*Chevron* conclusion that Congress had delegated gap-filling power"; quite the contrary, *Colony*'s exercise in statutory interpretation made clear that it "thought that Congress had 'directly spoken to the question at hand,' and thus left '[n]o gap for the agency to fill.'" *Home Concrete*, 132 S. Ct. at 1844 (quoting *Chevron*, 467 U.S. at 842–43). Specifically, *Colony* had weighed the textual arguments on both sides, examined the statute's legislative history, determined that the Commissioner's interpretation would create incongruity in the tax law, and arrived at its interpretation while "aware it was rejecting the expert opinion of the Commissioner of Internal Revenue." *Home Concrete*, 132 S. Ct. at 1844. Thus, the *Home Concrete* plurality concluded that *Brand X* did not require the Court to defer to the Commissioner's interpretation. *Id.* at 1843-44.[2]

This case is distinguishable. Unlike *Colony*, *Morin*'s exercise in statutory interpretation does not make clear that it "thought that Congress had 'directly spoken to the question at hand,' and thus left '[n]o gap for the agency to fill.'" *Home Concrete*, 132 S. Ct. at 1844 (quoting *Chevron*, 467 U.S. at 842–43). *Morin* did not analyze competing textual arguments, did not examine the legislative history of § 1101(a)(22), did not consider potential incongruity in the INA caused by *Morin*'s interpretation, and did not expressly consider and knowingly reject the BIA's interpretation of the statute. Although Patel claims that *Home Concrete* allows us to infer that *Morin* was aware of the BIA's interpretation because it predated *Morin*, we find no support for that inference. In *Colony*, the IRS Commissioner was a party to the case and the

---

[2]Justice Scalia concurred in the judgment, disagreeing with the plurality's view that *Colony*'s admission of statutory ambiguity did not render null its precedential effect under *Brand X*. However, he believed that *Colony* should control based on justifiable taxpayer reliance. *Home Concrete*, 132 S. Ct. at 1847-49 (Scalia, J., concurring in part and concurring in the judgment).

Court expressly considered and rejected the Commissioner's interpretation of the tax code. *See Colony, Inc. v. C.I.R.*, 357 U.S. at 32-33, 36-37. Nothing in *Morin* suggests an awareness of the BIA's interpretation.

Nor are we persuaded by Patel's contention that we should afford *Chevron* deference to the BIA's interpretation of § 1101(a)(22) only when the statute is at issue in removal cases. Whether or not the *Chevron* framework applies depends on whether Congress intended to delegate authority to an agency to speak with the force of law when clarifying ambiguous parts of a particular statute, not on the type of case in which that statute is applied. *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (holding that the *Chevron* framework applies when it is "apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law"); *Chevron*, 467 U.S. at 843-44 (holding that courts should defer to reasonable agency constructions of a statute when "there is an express delegation of authority to the agency to elucidate a specific provision of the statute").

We are not free to selectively apply *Chevron* deference to an agency's interpretation of a statute in some cases, but not in others. "[T]he meaning of words in a statute cannot change with the statute's application." *United States v. Santos*, 553 U.S. 507, 522 (2008) (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)). "To hold otherwise 'would render every statute a chameleon' and 'would establish within our jurisprudence . . . the dangerous principle that judges can give the same statutory text different meanings in different cases.'" *Id.* at 522-23 (quoting *Clark*, 543 U.S. at 382, 386). Thus, the BIA's interpretation must be given controlling weight whenever the statute is applied. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)("[W]e must interpret the statute consistently, whether

we encounter its application in a criminal or noncriminal context . . . .").

Patel does not claim to be a United States national under the BIA's interpretation of § 1101(a)(22). We therefore hold that he fails to state a claim.[3]

### III.

Nothing in our opinion prevents Patel from petitioning the Federal Bureau of Prisons to extend the benefits provided to United States nationals to permanent resident aliens, or from challenging the basis for drawing such a distinction among inmates through other means, political or legal. We hold only that on the facts alleged, Patel does not state a claim to be a United States national under the INA. For these reasons, we affirm the judgment.

*AFFIRMED*

DAVIS, Circuit Judge, dissenting:

Respectfully, I dissent.

It is true, of course, that we have "the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not addressed below." *McMahan v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 964 F.2d 1462, 1467 (4th Cir. 1992) (citation omitted). *See also Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) ("[A]n appellee may rely upon any matter appearing in the record in support of the judgment below."). Because we can, however, does not mean we should.

---

[3]The government argues that Patel also fails to state a claim under § 1503(a) because he fails to allege the deprivation of a right or privilege of nationality. Given that Patel's complaint fails for other reasons, we do not reach that issue.

On appeal from a district court's Rule 12(b)(6) dismissal of a complaint, we take the allegations of the complaint as true. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012). Kamal Patel is a lawful permanent resident of the United States who arrived in this country with his family at an early age. Patel registered for the Selective Service when he was 18. He also has applied for United States citizenship. He has sent sworn declarations of his allegiance to the United States to the President, the Secretary of State, and an Immigration Law Judge.

In 1992, Patel was convicted of a drug offense; he has been incarcerated in the United States since that time. He is scheduled to be released on July 28, 2014, according to the Bureau of Prisons ("BOP") website. Because the BOP classifies Patel as an alien, he is not eligible for certain prison programs available only to United States nationals. These include pre-community release, pre-community placement, participation in the Residential Drug Abuse Program, participation in the Life Connections Program, and halfway house placement.

Patel filed a complaint in June 2010 in the United States District Court for the Eastern District of North Carolina seeking a declaratory judgment under 28 U.S.C. § 2201[1] and 8 U.S.C. § 1503(a)[2] that he is a national of the United States. The district court, however, analyzed the claim by stating that it was cognizable under 28 U.S.C. § 2241 or 28 U.S.C. § 2255, which deal with habeas actions, or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which allows individuals to seek damages for certain kinds of constitutional violations committed by federal agents. Patel did not seek relief under *Bivens* or

---

[1]This section authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

[2]This section spells out the procedure for seeking a declaration of United States nationality. 8 U.S.C. § 1503(a).

either of those statutes, however, nor did he mention any of them in his complaint. Nonetheless, the district court quoted an unpublished opinion from the United States District Court for the Southern District of Ohio, stating, "[I]nmates do not have any federal constitutional right to participate in rehabilitative programs. Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison." J.A. 44 (quoting *Ahmad v. United States*, No. 2:08-CV-364, 2009 WL 2486004, at *2 (S.D. Ohio Aug. 11, 2009) (unpublished) (alteration in original)). The district court concluded, "Thus, assuming without deciding that Patel's claim is cognizable, the claim fails on the merits." This appeal followed, in the course of which we appointed counsel to represent Patel.

I endorse judicial efficiency as much as any judge, especially for busy district courts, but there are untold benefits in permitting district courts to correct their own errors; this will sometimes require defendants in an inmate's suit to respond, by motion or answer, to a complaint. As the majority acknowledges, ante at 3, the district court erroneously interpreted Patel's complaint as asserting that he had a right to participate in prison programs, and so the court dismissed the complaint for failure to state a claim, noting that inmates do not have a constitutional right to participate in rehabilitative programs. That, however, is a different question from whether Patel is *eligible* for participation in such programs, an issue the district court failed to analyze. Accordingly, I would not reach the merits and would instead simply vacate the judgment and remand the case to the district court for further proceedings, including analysis of Patel's claim under 8 U.S.C. § 1503.

Eschewing a remand, the majority elects to reach the merits of the claim the district court never examined and concludes that Patel failed to state a claim upon which relief could be granted. Indeed, the majority holds that it is *impossible* for him to state a declaratory judgment claim to the privileges of

a "national of the United States," citing, *inter alia*, *Fernandez v. Keisler*, 502 F.3d 337 (4th Cir. 2007), *cert. denied sub nom. Fernandez v. Mukasey*, 555 U.S. 837 (2008). I cannot join in this conclusion. Were I to reach the merits, for the reasons well-stated by Judge Motz in her dissenting opinion in *Fernandez*, *id.* at 352, I would conclude that Patel has stated a cognizable claim.[3] *See United States v. Morin*, 80 F.3d 124, 126 (4th Cir. 1996); *see also McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) ("[W]e have made it clear that, as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions. *See Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir. 2003).").

---

[3]While I fully understand the convoluted bases for this circuit's assault on the continuing legitimacy of *Morin*, as begun in *Fernandez* and enlarged upon by the majority here, in my view, *Morin* remains binding circuit precedent that can only be abrogated by an en banc decision. In any event, there is something odious in the government arguing (in *Fernandez* and in the case at bar) *the opposite of what it argued* in *Morin*, when it suited the government's purpose. *See* Gov't Brief, *United States v. Morin*, 1995 WL 17054182, at *12 n.3 (Sept. 15, 1995) ("Consequently, given [the intended murder victim's] pending application for citizenship, it can fairly be said that he owed allegiance to the United States [and therefore was a national of the United States]."). Manifestly, despite the criticisms leveled at Judge Wilkinson's *Morin* opinion in *Fernandez* and in the majority opinion here, the *Morin* panel did not adopt its reading of 8 U.S.C. § 1101(a)(22) *sua sponte* and without due deliberation; *it did so at the urging of the government*. And, after all, the Attorney General, the relevant "executive department" involved here, *see* ante at 5, superintends both the Board of Immigration Appeals as well as the Criminal Division of the Department of Justice. It is indeed curious that a statute this Court had no difficulty interpreting in 1996 (in a manner urged by the agents of the Attorney General) now requires deference to, and a contrary interpretive aid of, the BIA, when the very words of the statute have not changed.