McKEAGUE, Circuit Judge,
dissenting.
The majority undertakes a well-reasoned effort to uphold the Secretary’s interpretation of the term “entitled to” as neither contrary to Congress’s clear intent nor an impermissible construction of the term. We do not, however, write on a blank slate. We have already wrestled with the very statutory provision at issue and arrived at definitive conclusions as to its meaning. In my opinion, stare decisis demands greater respect for our ruling in Jewish Hospital v. Sec’y of Health & Human Servs., 19 F.3d 270, 272 (6th Cir.1994).
A. Doctrine of Stare Decisis
Stare decisis, “to stand by things decided” in Latin, is “the doctrine of precedent, under which a court must follow earlier decisions when the same points arise again in litigation.” Black’s Law Dictionary (9th ed. 2009). “The obligation to follow precedent begins with necessity!;] ... no judicial system could do society’s work if it eyed each issue afresh in every case that raised it.” Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (citing B. Cardozo, The Nature of the Judicial Process 149 (1921)). “Time and time again,” the Supreme Court has “recognized that ‘the doctrine of stare de-cisis is of fundamental importance to the rule of law.’” Hilton v. South Carolina Public Railways Comm’n, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (quoting Welch v. Texas Dep’t of Highways and Public Transp., 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)). “Adherence to precedent promotes stability, predictability, and respect for judicial authority.” Id. Accordingly, a court may disregard stare decisis and depart from established precedent only upon “some compelling justification.” Id. These considerations have “special force in the area of statutory interpretation, ... [where] the legislative power is implicated, and Congress remains free to alter what we have done.” Id. (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 172-73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)).
Moreover, stare decisis plays a defined role in the present context, i.e., where an agency charged with implementing statutory authority has interpreted the statute in a manner at odds with a court’s prior pronouncement: “Once we have determined a statute’s clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency’s later interpretation of the statute against our prior determination of the statute’s meaning.” Sandusky Mall Co. v. NLRB, 242 F.3d 682, 688 n. 6 (6th Cir.2001) (quoting Lechmere, Inc. v. NLRB, 502 U.S. 527, 536-37, 112 S.Ct. 841, 117 L.Ed.2d 79 *271 (1992)). Thus, “[a] court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference,” but “only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” National Cable & Telecommunications Ass’n v. Brand X Internet Servs., 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005).
In other words, if a court has already decided that a statutory provision or term is unambiguous, an agency’s conflicting construction is foreclosed, and the question of Chevron deference is essentially preempted. See Lechmere, 502 U.S. at 536-37, 112 S.Ct. 841 (observing that stare decisis has controlling effect under these circumstances before ever reaching any question of deference to the agency under Chevron). This is because the court has determined there is no room for agency discretion to fill a statutory gap where there is no gap. Brand X, 545 U.S. at 982-83, 125 S.Ct. 2688. See also, United States v. Home Concrete & Supply, LLC, — U.S. -, 132 S.Ct. 1836, 1843, 182 L.Ed.2d 746 (2012) (Breyer, J., plurality opinion). “If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” Home Concrete, 132 S.Ct. at 1844 (quoting Chevron U.S.A., Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (emphasis added by Justice Breyer deleted)).[1]
These venerable principles of stare deci-sis, “the everyday working rule of our law,” B. Cardozo, The Nature of the Judicial Process 21 (1921), are effectively codified in our Sixth Circuit Rule 32.1(b): “Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc.” See United States v. McMurray, 653 F.3d 367, 383-84 (6th Cir.2011) (McKeague, J., dissenting) (collecting cases abiding by rule). Simply put, prior published decisions of the Sixth Circuit are binding on other Sixth Circuit panels unless and until overruled by the Supreme Court or by the Sixth Circuit sitting en banc. Id.
B. Jewish Hospital Ruling
With these undisputed principles of stare decisis in mind, we turn to the import of our ruling in Jewish Hospital. At issue in Jewish Hospital was the meaning of “eligible for” in the Medicaid fraction of an earlier version of the disproportionate patient percentage (DPP) statute, the same provision at issue in this case. 42 U.S.C. § 1395ww(d)(5)(F)(vi). The Jewish Hospital court defined “eligible for” with reference to and in contradistinction from “entitled to,” another term appearing in the DPP statute. The court interpreted “eligible for” as meaning “ ‘qualification’ for benefits or the capability of receiving those benefits.” Jewish Hospital, 19 F.3d at 274. In contrast, the court held that
*272 “[t]o be entitled to some benefit means that one possesses the right or title to that benefit.” Id. at 275 (emphasis in original). The court stated that the “entitled to” language “fixes the calculation upon the absolute right to receive an independent and readily defined payment.” Id. (emphasis in original). It is true that the Jewish Hospital court was not required to define “entitled to” in order to define “eligible for.” However, its definition of “entitled to” was no mere dictum; it was integral to its determination of the definition of “eligible for.”
This is important because the HHS regulation at issue in this case defines “entitled to,” as used in the Medicare fraction of the DPP statute, in a manner contrary to the Jewish Hospital definition of “entitled to,” assigning instead the same meaning that Jewish Hospital held Congress assigned to “eligible for.” That is, the HHS regulation applies “entitled to” in the Medicare fraction as though it means “eligible for” irrespective of whether the patient had “the absolute right to receive an independent and readily defined payment.” The HHS regulation thus undeniably flies in the face of the teaching of our opinion in Jewish Hospital.
In Jewish Hospital, we invalidated the HHS regulation because it conflated “eligible for” and “entitled to,” giving the two terms similar meaning even though Congress’s use of the two different terms in close proximity to each other in the same provision indicated they mean different things. Id. at 275 (“Adjacent provisions utilizing different terms, however, must connote different meanings”). The Jewish Hospital court thus held that the HHS regulation failed to qualify for Chevron deference because it was contrary to the “unambiguously expressed intent of Congress” as expressed in the clear statutory language. Id. at 274-75 (“The Secretary’s interpretation runs counter to the language of the statute.... [T]he Secretary’s promulgated regulation runs counter to this clear intent by unnecessarily restricting the available subsidy, without foundation in the statute.”).
Alternatively, the court held that, even if the statutory language were “deemed silent or ambiguous” on the precise question at issue, the HHS regulation would still fail to garner deference under the second prong of Chevron’s framework because “the Secretary’s construction is not permissible.” Id. at 275 (emphasis in original).[2] With reference to legislative history, the court explained that the Secretary’s interpretation was impermissible because it was “more restrictive than that intended by Congress and thus runs counter to the statutory language.” Id. at 276. The second rationale for invalidating the HHS regulation, like the principal rationale, is premised on the same conclusion that the Secretary’s definition was contrary to Congress’s intent as expressed in the statutory language. Id. at 275-76. The alternative rationale does not in any way undermine the integrity of the court’s principal holding, but rather buttresses it.
The district court took Jewish Hospital seriously, viewing its teaching as both *273 binding and persuasive and concluding that the HHS regulation at issue is contrary to Congress’s intent as revealed in the clear and unambiguous language of the DPP statute. Metropolitan Hosp. v. U.S. Dep’t of Health & Human Servs., 702 F.Supp.2d 808, 825 (W.D.Mich.2010). Hence, in order to find error in the district court’s ruling, consonant with the dictates of stare decisis, we must identify “some compelling justification.” Hilton, 502 U.S. at 202, 112 S.Ct. 560. In my opinion, the majority fails to do so.
C. Holding and Dictum
To be sure, the majority does not ignore Jewish Hospital. Nor do I mean to suggest that the majority is oblivious to the importance of stare decisis. The majority proposes that Jewish Hospital’s definition of “entitled to” does not trump the HHS’s contrary definition because Jewish Hospital’s definition does not “follow from the unambiguous terms of the statute.” Brand X, 545 U.S. at 982, 125 S.Ct. 2688.
As indicated above, a fair reading of Jewish Hospital indicates that the HHS definition of “eligible for” was invalidated primarily because it improperly conflated the meaning of “eligible for” and “entitled to” in a manner contrary to the “unambiguously expressed intent of Congress” as expressed in the “plain language” of the statute. Jewish Hospital, 19 F.3d at 274-75. This principal rationale for the Jewish Hospital court’s decision is set forth under the heading, “The Legislative Mandate is Clear from the Statutory Language.” Id. at 274. I take the Jewish Hospital opinion to mean what it says and conclude that its definition of “entitled to” does follow, in the Brand X formulation, from the unambiguous terms of the statute, and therefore controls. As Brand X* recognizes, a court’s prior interpretation of a statute overrides an agency’s interpretation — before reaching any issue of deference under Chevron — if the court held the statute unambiguous. Brand X, 545 U.S. at 984, 125 S.Ct. 2688 (citing Lechmere, 502 U.S. at 536-37, 112 S.Ct. 841).
The majority attempts to marginalize Jewish Hospital’s principal rationale by characterizing it as a “suggestion,” because the court did not explicitly formalize its conclusion by so “holding.” The majority proposes that the court’s secondary or alternative rationale is really the decision’s primary holding. Again, the Jewish Hospital opinion speaks for itself. As explained above, the language of the court’s opinion clearly defeats the majority’s suggestion that the court did not hold that the language of the DPP statute was unambiguous. The majority’s semantic critique is unavailing.
Yet, the majority proposes that, even if Jewish Hospital purports to derive a clear definition of “entitled to” from the unambiguous language of the DPP statute, that definition is not part of its holding and is not binding. The majority views the definition of “eligible for” as the precise question addressed in Jewish Hospital. The court’s reliance on its definition of “entitled to” to determine, by contradistinction, the meaning of “eligible for” is said to be mere dictum. In support, the majority cites Northeast Hosp. Corp. v. Sebelius, 657 F.3d 1, 12 n. 7 (D.C.Cir.2011) (declining to follow Jewish Hospital and finding the meaning of “entitled to” ambiguous).
The D.C. Circuit’s dismissal of the Jewish Hospital definition of “entitled to” as dictum is entitled to little weight. The D.C. Circuit was not obliged to follow Jewish Hospital by stare decisis generally or by 6th Cir. R. 32.1. Moreover, the Northeast Hospital decision did not uphold the HHS regulation’s definition of “entitled to.” It held that the term was not clear and unambiguous. In this respect, it de *274 parted from the analysis of Jewish Hospital, preferring the reasoning of the dissent — a view which did not and has not prevailed in the Sixth Circuit. Still, the Northeast Hospital court went on to conclude that the HHS interpretation, whether “permissible” or not (a question it did not reach), could not be upheld. Even though the Northeast Hospital ruling did not follow Jewish Hospital, it did not result in or approve any other definition of “entitled to.” The significance of Northeast Hospital is further undercut by the fact that Jewish Hospital has been followed in published decisions of three of our sister Circuits. See Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 988 (4th Cir.1996); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261, 1265 (9th Cir.1996); Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041, 1041 (8th Cir.1996).
Neither is the majority’s position otherwise persuasive. Granted, one panel of the Sixth Circuit is not bound by dictum in an earlier published panel opinion. BDT Products, Inc. v. Lexmark Int’l, Inc., 602 F.3d 742, 750 (6th Cir.2010). But the line between holding and dictum is not always clear. A “holding” is a court’s “determination of a matter of law pivotal to its decision; a principle drawn from such a decision.” Black’s Law Dictionary (9th ed. 2009). The holding of a decision, which has precedential effect, is to be contrasted with “obiter dictum,” which does not have precedential effect. “Obiter dictum,” “something said in passing” in Latin, is a “judicial comment while delivering a judicial opinion, but one that is unnecessary to the decision before the court and therefore not precedential.” Id. “Judicial dictum,” however, is an “opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision.” Id. Judicial dictum, sometimes referred to as “considered dictum,” albeit not necessarily binding, is entitled to considerable weight. See ACLU v. McCreary County, Ky., 607 F.3d 439, 448 (6th Cir.2010) (recognizing that appellate courts consider themselves bound by Supreme Court’s considered dicta almost as firmly as by its holdings); PDV Midwest Refining, LLC v. Armada Oil and Gas Co., 305 F.3d 498, 510 (6th Cir.2002) (lengthy discussion, though arguably dictum, followed as well-reasoned and persuasive); Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir.2006) (collecting cases recognizing that considered dictum is not to be taken lightly).
With these definitions in mind, the notion that Jewish Hospital’s definition of “entitled to” is dictum comes into focus. As I acknowledged above, the court did not have to define “entitled to” in order to determine the meaning of “eligible for.” To the extent that its definition of “entitled to” was not strictly necessary to its holding, the definition has characteristics of obiter dictum. But the Jewish Hospital definition of “entitled to” was not merely “a thing said in passing.” Far from it.
The Jewish Hospital court clearly considered both terms — terms that both appear in the same statutory provision — as operating in tandem with each other. The court defined each term with explicit and dependent reference to the other. In other words, the integrity of the Jewish Hospital court’s holding that “eligible for” has a clear and unambiguous meaning in Congress’s scheme — in terms of how it operates in the DPP formula — is dependent on its determination that “entitled to,” as it appears in the same formula, also has a clear and unambiguous meaning. The Jewish Hospital definition of “entitled to” thus appears to> be a determination on a question that was “directly involved” and “passed on by the court.” In this respect, *275 the definition has the characteristics of judicial or considered dictum, entitled to careful respect, if not outright adherence, per 6th Cir. R. 32.1.
Furthermore, as explained above, a fair reading of the court’s opinion reveals that its definition of “entitled to” is so integral to its reasoning and holding on the precise question before it as to be fairly characterized as “pivotal,” representing a principle that can and should be drawn from the decision. For this reason, the Jewish Hospital definition of “entitled to” is properly deemed part of the court’s holding and should be considered binding precedent in the Sixth Circuit.
D. Compelling Justification
As such, we are constrained to follow Jewish Hospital absent compelling justification. Hilton, 502 U.S. at 202, 112 S.Ct. 560. Ordinarily, compelling justification would consist of some intervening controlling authority, like a decision of the Supreme Court mandating modification of our prior precedent. See United States v. Lucido, 612 F.3d 871, 876 (6th Cir.2010); Sierra Club v. Korleski, 681 F.3d 342, 354 (6th Cir.2012) (Cole, J., dissenting). The majority has not identified any such intervening Supreme Court authority or any other compelling justification. Rather, the bulk of its opinion is devoted to explaining why the Secretary’s interpretation of “entitled to” is superior to that declared in Jewish Hospital. Right or wrong, this is an exercise we are not at liberty to undertake. It is contrary to the Supreme Court’s rulings in Brand X and Home Concrete, which teach that our Jewish Hospital ruling should be deemed to “trump” the Secretary’s contrary interpretation.
Jewish Hospital is still good law. Its analysis has been followed in several other circuits. Whether we think it wise or not, stare decisis and 6th Cir. R. 32.1 demand our adherence, for the sake of stability and predictability in the law and respect for judicial authority. See Hilton, 502 U.S. at 202, 112 S.Ct. 560. If Jewish Hospital is in need of modification, this must be accomplished by the Sixth Circuit en banc, not by the majority in this case.
Accordingly, I respectfully dissent. I would affirm the judgment of the district court.

. In fact, according to Justice Scalia’s concurring opinion in Home Concrete (which was decisive in the Court’s 5-4 ruling), a court’s prior construction of a statute is binding as law, irrespective of whether the court expressly purported to be resolving an ambiguity. Home Concrete, 132 S.Ct. at 1846-48 (Scalia, J., concurring in part). In Justice Scalia’s view, "[o]nce a court has decided upon its de novo construction of a statute, there no longer is a different construction that is consistent with the court’s holding and available for adoption by the agency.’’ Id. at 1846 (quoting Brand X, 545 U.S. at 1018, n. 12, 125 S.Ct. 2688 (Scalia, J. dissenting)). Justice Scalia thus concludes that stare decisis dictates that a court abide by prior judicial precedent over and against a contrary interpretation by an agency, irrespective of the grounds for the court’s prior ruling.

. The Jewish Hospital court offered this second rationale for the manifest purpose of correcting a misstatement of law evident in the district court ruling being reversed. See id. at 275. The court recognized that, upon holding the HHS regulation contrary to the unambiguous language of the statute under the first prong of the Chevron framework, "that is the end of the matter." Id. (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Nonetheless, the court explained why the district court’s ruling was in error under both prongs of the Chevron framework.