BROWN, Circuit Judge,
concurring:
I join in the Panel Opinion because “the Final Rule ran afoul of the underlying statutes (and was therefore outside the EPA’s delegated authority).” Op. 530. To reach this result, the court dances around the familiar Chevron two-step with the following formulation: “Of course, ‘if Congress has directly spoken to an issue then any agency interpretation contradicting what Congress has said would be unreasonable.’ ” Op. 534 (quoting Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 n.4, 129 S.Ct. 1498, 173 L.Ed.2d 369 (2009)). I assume this reasoning casts no aspersions on the first step of Chevron. But see United States v. Home Concrete & Supply, LLC, 566 U.S. 478, 132 S.Ct. 1836, 1846 n.1, 182 L.Ed.2d 746 (2012) (Scalia, J., concurring in part and concurring in the judgment).
Entergy Corp. merely establishes an agency’s unreasonable statutory interpretation is outside the scope of any statutory ambiguity. The decision does not comment on the situation in which a court might find an agency’s interpretation reasonable without satisfying Chevron Step One, i.e., without a judicial determination that the “traditional tools” of interpretation identify a statutory ambiguity that, in turn, authorizes agency action on the “precise question at issue.” Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 843 n.9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
This case extends no further than what Entergy Corp. established. As the Panel acknowledges, EPA set forth no statutory ambiguity authorizing its Final Rule. Op. 534. Under Step One, this ends the matter. See, e.g., La. Pub. Serv. Comm’n v. FCC, 476 U.S. 355, 374, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (holding “an agency literally has no power to act ... unless and until Congress confers power upon it”). Step One would decompose if EPA’s premise here were accepted: An agency can take “unrelated” statutory provisions that, in its view, “collectively create ambiguity,” and command deference because a court finds the agency’s interpretation “reasonable” at Step Two. See Op. 534.
Chevron’s “reasonableness” inquiry could (and should) be governed by statutory text, but Step Two jurisprudence reveals statutory text need not play much of a role at all — let alone a dispositive one. See, e.g., Stephen G. Breyer, et al., Administrative Law and Regulatory Policy: Problems, Text, and Cases 359 (7th ed. 2011) (“The weight of scholarly opinion endorses an equation of step two with arbitrary and capricious review.” Such review is “not an inquiry into congressional instructions, but an assessment of whether the agency’s decision is reasonable on the merits and not, in the [Supreme] Court’s words, arbitrary or capricious in substance.”). This is why Step One is so critical. For all its potential for manipulation, it is Chevron Step One where “[t]he court’s task is to fix the boundaries of delegated authority, an inquiry that includes defining the range of permissible criteria.... [T]he judicial role is to specify what the statute cannot mean, and some of what it must mean,, but not all that it does mean.” Henry P. Monaghan, Marbury and the Administrative State, 83 Colum. L. Rev. 1, 27-28 (1983); see also Gerald L. Neuman, Law Review Articles that Backfire, 21 U. Mich. J.L. Reform 697, 711-12 (1988) (“Mona-ghan’s thesis reappeared, without citation, as the core of Justice Stevens’s new ap *539 proach to statutory interpretation in [Chevron].”).
Truncating the Chevron two-step into a one-step “reasonableness” inquiry lets the judiciary leave its statutory escort to blow on an agency’s dice. “It isn’t fair. It isn’t nice.” Frank Sinatra, Luck Be A Lady, on Sinatra ’65: The Singer Today (Reprise Records 1965). In fact, some advocates of a one-step reasonableness approach appeal to the judiciary’s fear of commitment— promising that courts can avoid “ascertain[ing] whether the statute has a single, clear meaning before deciding whether the agency’s interpretation is reasonable.” See Matthew C. Stephenson & Adrian Vermeule, Chevron Has Only One Step, 95 Va. L. Rev. 597, 605 (2009). Congress is out of the picture altogether. When all that matters is aligning judicial and administrative views of reasonableness, and reasonableness at Step Two need not be primarily or solely determined by the “traditional tools” of statutory interpretation, there is no incentive to petition the legislature for statutory clarity. Agencies are free to experiment with various interpretations, and courts are free to avoid determining the meaning of statutes. See Kenneth A. Bamberger & Peter L. Strauss, Chevron’s Two Steps, 95 Va. L. Rev. 611, 618-19 (2009).
An Article III renaissance is emerging against the judicial abdication performed in Chevron’s name. If a court could purport fealty to Chevron while subjugating statutory clarity to agency “reasonableness,” textualism will be trivialized. “For whatever the agency may be doing under Chevron, the problem remains that courts are not fulfilling their duty to interpret the law.” Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1152-53 (10th Cir. 2016) (Gorsuch, J., concurring).
I join in the Panel Opinion because it does not extend to the situation in which an agency’s statutory interpretation is found to be “reasonable” without a court first determining the statutory bounds of agency authority. But if Chevron’s two-step inquiry can be collapsed into one “reasonableness” inquiry no different than current Step Two jurisprudence, there is yet another reason to question Chevron’s consistency with “the judicial department's]” “emphatic[ ]” “province and duty ... to say what the law is.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).